**SOUTH COUNTY GAS COMPANY**

v.

**Edward F. BURKE, et al.**

**No. 87–141–M.P.**

Supreme Court of Rhode Island.

Dec. 14, 1988.

Thomas W. Heald, Heald & Beasley, Edmund F. Murray, Jr., Arthur Peter Lovely, Asst. Attys. Gen., Providence, for plaintiff.

John G. Coffey, George Salem, Coffey, McGovern, Noel & Neal Ltd., Providence, for defendants.

## OPINION

**MURRAY, Justice.**

This is a statutory petition for certiorari brought by the South County Gas Company (the company) pursuant to G.L. 1956 (1984 Reenactment) § 39–5–1 seeking a review of the decision and order of the Public Utilities Commission (the commission) issued in docket No. 1854.

On June 26, 1986, the company filed a tariff requesting increases in revenues with the commission. The commission, acting under authority of G.L. 1956 (1984 Reenactment) § 39–3–11, suspended for five months the August 1, 1986 effective date of the tariff's proposed changes. The order then became effective as of January 1, 1987. This effective date was further delayed by the commission an additional three months to March 31, 1987. On that date, the commission issued its report and order rejecting, denying, and dismissing the company's tariff filing. The company appeals, presenting its appeal on one issue.

The sole issue presented for our consideration on review of this order promulgated by the commission is whether the commission in its rate-making process treated the gain made from the sale of a parcel of the company's real estate equitably and reasonably. In such query we look to the record and find that the evidence was reasonable and substantially supports the commission's determination. Hence we affirm the order of the commission.

A factual synopsis of the company's involvement with the property in question is relevant to our review. The company purchased the property located at 49 High Street, Westerly, Rhode Island, in 1965. Until 1983 all expenses and income associated with it were treated "above the line." Thus all the property-related expenses (primarily depreciation) incurred during that eighteen-year period were charged to the ratepayers and the cost of land and buildings earned a rate base return. In 1983, after further investigation into the activities pertaining to this property, the commission in docket No. 1671 determined that only 33 percent of the property should be allocated to utility use. During those hearings Lawrence M. Sullivan and Richard A. Sullivan, Jr., the exclusive stockholders of the company, threatened to sell or rent the property if the prorated allocation was imposed. In August of 1986 the company carried out the threat and sold the property for $450,000, which after closing costs resulted in a net gain of $298,914.73. The company holds a ten-year interest-bearing mortgage note on the unrecovered gain in the amount of $163,844.

The commission held numerous hearings between October 8, 1986, and February 9, 1987, addressing, among other things, the treatment of the gain made from the sale. Appearances were entered by the company, the Department of the Attorney General, and the Division of Public Utilities and Carriers (the division). Both the division and the company submitted the prefiled testimony of three witnesses. Principally

responsible for reviewing the proposed rate filing and making recommendations relative to cost of service and rate base was the division's chief accountant and witness Leo H. Fox, C.P.A. In his prefiled testimony, Fox recommends including 84.586 percent of the amount realized from the sale of the property in utility-related income and amortizing it over a fifteen-year period. Fox asserted that this percentage reflects the amount that the ratepayers paid toward the depreciation expense of the property and that consequently a corresponding amount of the gain should be treated as utility-related income. Except for the fifteen-year amortization period, the commission adopted Fox's recommendations.[1]

The company challenges the factual basis underlying the decision and order on the grounds that, in its view, the commission chose to ignore key testimonial evidence. Specifically the company refers to the prefiled testimony of Lawrence Sullivan in which he stated that, between 1968 and 1983, the company rented portions of the property to third-party tenants and included the resulting gains in utility-related income. Because the rental income exceeded the expenses associated with the subject property, the company argues that the ratepayers in fact "got a free ride" and that the commission's order allocating approximately 84.6 percent of the gain to the rate base is improper and not substantially supported by legal evidence.

We note at the outset our limited power of review in regulatory proceedings. In examining a decision and order of the commission, this court neither weighs conflicting evidence nor engages in independent factfinding. *See, e.g., South County Gas Co. v. Burke,* 486 A.2d 606, 607 (R.I.1985); *New England Telephone & Telegraph Co. v. Public Utilities Comm'n,* 446 A.2d 1376, 1380 (R.I.1982); *Valley Gas Co. v. Burke,* 446 A.2d 1024, 1030 (R.I.1982). We accept

the commission's findings of fact as prima facie true, and refuse to disturb an order promulgated in the exercise of its administrative discretion unless the commission clearly exceeds its statutory authority or acts illegally, arbitrarily, or unreasonably. Section 39–5–3. *See In re Woonsocket Water Dept.,* 538 A.2d 1011, 1013 (R.I.1988). Thus, our inquiry addresses a determination of whether the commission's order was "lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence." *Roberts v. Narragansett Electric Co.,* 490 A.2d 506, 507 (R.I.1985) (quoting *New England Telephone & Telegraph Co. v. Public Utilities Comm'n,* 446 A.2d 1376, 1380 (R.I.1982)). *See Violet v. Narragansett Electric Co.,* 505 A.2d 1149, 1151 (R.I.1986).

In the case at bar, the company in essence asks this court to consider de novo the evidence presented before the commission and render a different decision. This we decline to do. While the company argues that the commission "chose to ignore" Sullivan's testimony regarding third-party rental income, the decision and order reveals that his testimony was considered and, for reasons clearly enunciated in its report, rejected. That the commission decided to adopt Fox's recommendations relative to the omission of this rental income from the accounting calculation is a matter within the sound discretion of this administrative body. *See generally Town of New Shoreham v. Burke,* 519 A.2d 1127, 1132 (R.I.1987).

One of the express purposes underlying the establishment of the commission in G.L. 1956 (1984 Reenactment) § 39–1–1 is to provide for the fair and orderly regulation of utility companies in the public interest. In furtherance of this objective, the Legislature has granted the commission the exclusive power to promulgate and su-

---

1. The commission instead chose to implement a ten-year amortization period, tracking the period of the mortgage note receivable. The company, through the prefiled testimony of Lawrence Sullivan, asserted two arguments on its behalf. Sullivan contended that (1) this is a nonrecurring event and consequently the gain should not be included in utility related income or (2) if the gain is recognized as income, then the proper allocation is the percentage established in 1983 (33 percent) less the value of the related land and the tax effect. The commission rejected the company's contentions, stating that this approach ignored the fact that 100 percent of the subject property had been treated above the line for an estimated eighteen years.

pervise orders governing the conduct of these companies. Section 39–1–1. It is apparent from an examination of the enabling act that the Legislature intended to establish a qualified administrative body to evaluate technical evidence, address the myriad of complex problems associated with regulatory proceedings, and render intelligent decisions. We honor that legislative intent and refuse to substitute our judgment for the judgment of the commission. As Chief Justice Fay stated in *In re Woonsocket Water Dept.*, 538 A.2d at 1014, "[t]his court is ill equipped to second-guess the multifarious nature of commission decisions."

The commission's order is fair, reasonable, and well supported by the evidence. Accordingly the petition for certiorari is denied and dismissed, and the writ heretofore issued is quashed. The papers certified to this court are ordered returned to the commission with our decision endorsed thereon.