**PROVIDENCE GAS COMPANY**

v.

**James J. MALACHOWSKI, in his capacity as Administrator of the Division of Public Utilities and Carriers.**

No. 91–80–M.P.

Supreme Court of Rhode Island.

Dec. 9, 1991.

Michael P. DeFanti, Hinckley, Allen, Snyder & Comen, Providence, for plaintiff.

Julio C. Mazzzoli, Brenda K. Gaynor, Sp. Asst. Attys. Gen., Thomas Heald, Hugo Ricci, Jr., Ricci & Ricci, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This is a statutory petition for certiorari brought by the Providence Gas Company (company) pursuant to G.L.1956 (1990 Reenactment) § 39–5–1, seeking a review of the report and order of the Public Utilities Commission (commission) issued in docket No.1971. The commission disallowed training-labor costs from the rate base and established a termination date for the accrual of allowance for funds used during construction (AFUDC) associated with the company's replacement of a customer-information system (CIS). We affirm the order of the commission in part and modify it in part for the reasons set forth herein.

On May 17, 1990, the company filed for a general rate increase to become effective on June 18, 1990. The proposed rate increase included costs, capitalized and added to the rate base, associated with the construction and the implementation of the replacement CIS. The CIS functions to control billing and maintenance records for the customers of the company. Acting pursuant to G.L.1956 (1990 Reenactment) § 39–3–11, the commission suspended the June 18, 1990 effective date for the general increase for five months until November 18, 1990. During this suspension, the commission held hearings during October, November, and December of 1990 and February of 1991 to examine the necessity and reasonableness of the proposed rate increase. On November 8, 1990, the commission suspended the effective date until February 17, 1991. The commission then issued its report and order on February 15, 1991.

The company has filed for a general rate increase, including the capitalized cost of service for its new CIS, which it anticipated placing into service in May 1991. The com-mission used a rate year of February 28, 1991, to February 29, 1992. The company sought to include, among other things, the costs of training labor associated with the CIS in the total amount to be capitalized, amortized, and added to the rate base. For purposes of this rate case, expenses projected through November 1990 were included in the rate filing. The commission sets customer rates that allow a utility company to earn an amount conducive to attracting investors and also to recover its operating expenses, amortization expenses, and capital costs once the capital project is completed and functioning.

The Division of Public Utilities and Carriers (division) challenged inclusion of the CIS training-labor costs in the rate base. The division recommended disallowing capitalized training-labor costs in order to prevent the company from recovering these amounts twice because it alleged that they were included in the labor expense included in the rate base computed in the prior rate case, docket No.1914.

The company also sought to include the accrual of AFUDC through November 1990 and to accrue these costs until the construction and the implementation of the CIS were complete.[1] The division recommended that the commission disallow the company's AFUDC accrual after May 1990 when, it asserted, the avoidable delays in the project's completion and implementation occurred. The division presented no evidence before the commission indicating that the delay was imprudent. The company, however, presented evidence and testimony indicating reasons for the delay in conversion and implementation of the CIS. Raymond Allen, vice president and secretary of the company, testified that because of the nature of the system, the complexity in conversion, the ramifications of system problems on customer service and billing, and the higher intensity business activity during the heating season, such risk of interruption due to system errors could be

---

1. Allowance for funds used during construction (AFUDC) is a method of deferring costs associated with the construction of the capital asset, the CIS in this case. The costs are deferred in a capital account and added to the direct costs of the system. The entire amount is then included in the rate base once the CIS is completed and placed into service.

detrimental to the company and its customers if the system were to be converted at an earlier time.

The company's prior rate case, docket No.1914, included an amount for the cost for employee labor, charged to expenses and included in the cost of service for that rate case. The division's expert, David J. Effron (Effron), stated that at the time of the last rate case, docket No.1914, the idea of capitalizing training costs was not considered. He testified that

"[i]n effect, these employees' time was charged to expense and included in the cost of service in that case. To permit these employee costs to now be capitalized to the cost of the project would, in effect, require ratepayers to pay twice for these costs, once through expenses included in the cost of service in the last case, and again through the recovery by the company of the CIS costs in this and future cases. Such a double recovery would be improper."

The company neither objected to this testimony nor presented any rebuttal testimony to contradict Effron. The division further presented expert witness Kathryn T. Godbout's testimony that the rates in docket No.1914 included anticipated test-year labor wages for this rate case. The company's witnesses, Bruce G. Wilde, vice president for human resources, and Gary S. Gilheeney, controller and assistant treasurer, did not know whether the company had, in fact, excluded wages to be deferred until the next case.

The commission issued its report and order on February 15, 1991. In that report, the commission, among other things, disallowed the inclusion of training-labor costs in the CIS costs to be capitalized. The commission stated: "Mr. Effron's assertion that there was a 'double recovery' remains unrebutted. In the absence of solid factual evidence to the contrary, we adopt Mr. Effron's adjustment in the amount of $859,000." The commission relied on the fact that the company argued that the recommendation to disallow training-labor costs from the CIS's total costs was erroneous factually, yet it made no citation to the

record to support its allegation of error. The commission therefore adopted Effron's unrebutted testimony and noted the failure of the company to present factual support in the record for its contention of error.

The commission determined that since the rate year went from February 28, 1991, through February 29, 1992, and the inservice date of the CIS would be considered to be June 1, 1991, it would include 75 percent of the costs to reflect 75 percent of the rate year in which the system would be used and useful. The commission would not limit the front end of the AFUDC accrual, and it also rejected the argument of the division's expert regarding inappropriate accrual because it rejected the division's argument that the delay on the project was avoidable. Regarding continued accrual, however, the commission ruled:

"[T]he Commission is of the opinion that the accrual of AFUDC must come to an end at some point. Based upon present projections that could occur in May of 1991 or months thereafter. We find that the continued accrual beyond that period is unacceptable. We note that the Company has indicated that the design and construction of the system were completed in late summer of 1990. Furthermore, the Company has suggested that it could have put the system in operation during the fall of 1990 but that it preferred to defer conversion until May, 1991 because in the warmer months 'demand for service is reduced' and 'conversion will be substantially less disruptive.' * * * Under the circumstances we believe it was within the Company's control to implement the CIS by September 1, 1990. Accordingly, we will limit AFUDC accrual to that date."

The commission therefore cut off accrual past September 1, 1990, relying on the company's testimony regarding the status of the project and its reasons for delaying implementation. The commission rejected the division's rationale for limiting the company's accrual of AFUDC but decided that it would not recognize accrual for additional AFUDC beyond August 31, 1990, stating, "We remove * * * AFUDC of $300,000

for the months of September, October, and November" from the total CIS cost projected as of November 1990.

The company petitioned this court for a writ of certiorari to review the commission's decision to adjust negatively the company's proposed total costs of the CIS to be calculated into the rate base, limiting the company's recovery of AFUDC in time, and disallowing capitalized training-labor costs in connection with the CIS project. The company also requested this court to remand the case to the commission with orders to include 75 percent of the May 1991 costs, when the CIS would be complete, rather than the November 1990 costs utilized by the commission.

■■■ The Supreme Court has the authority to review decisions and orders of the commission in order to assess their legality and reasonableness. G.L.1956 (1990 Reenactment) § 39–5–1. The court may affirm or reverse the decisions of the commission or may remand a cause to it as it finds law or equity to require. Section 39–5–4. The commission's factual findings are taken as prima facie evidence of truth, over which the court cannot apply its own judgment or weigh conflicting evidence. Section 39–5–3. See South County Gas Co. v. Burke, 551 A.2d 22, 24 (R.I.1988) (court cannot weigh evidence or engage in factfinding). The court does not act as a factfinder in commission matters when reviewing utility rate cases. Block Island Power Co. v. Public Utilities Comm'n, 505 A.2d 652, 653 (R.I.1986); New England Telephone & Telegraph Co. v. Public Utilities Comm'n, 116 R.I. 356, 362–63, 358 A.2d 1, 7 (1976). The factfinding task is expressly reserved for the commission, and the court is not to substitute its judgment for the commission's. South County Gas Co. v. Burke, 551 A.2d at 25. The court determines whether the decision is lawful, reasonable, and well supported by the evidence, Audubon Society of Rhode Island v. Malachowski, 569 A.2d 1, 2 (R.I.1990); New England Telephone & Telegraph Co. v. Public Utilities Comm'n, 446 A.2d 1376, 1380 (R.I.1982), while affording great deference to decisions of the Public Utilities Commission in its rate-making regulatory capacity. Blackstone Valley Electric Co. v. Public Utilities Comm'n, 543 A.2d 253, 255 (R.I.), cert. denied, 488 U.S. 995, 109 S.Ct. 561, 102 L.Ed.2d 587 (1988); Narragansett Electric Co. v. Kennelly, 88 R.I. 56, 85, 143 A.2d 709, 726 (1958). The Legislature has specifically mandated that "[a]n order * * * shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably." Section 39–5–3. Its findings are presumed reasonable "until shown to be clearly, palpably and grossly unreasonable by clear and convincing evidence." New England Telephone & Telegraph Co., 116 R.I. at 377, 358 A.2d at 15.

■■■ In general, as the court has stated, "[W]e determine whether the commission's findings are lawful and reasonable, are fairly and substantially supported by legal evidence, and are sufficiently specific to enable us to ascertain if the evidence upon which the commission based its findings reasonably supports the result." Violet v. Narragansett Electric Co., 505 A.2d 1149, 1151 (R.I.1986). The commission must provide sufficient findings and evidence upon which it bases its decision in order for the court to make a reasoned determination of whether the commission acted "illegally, arbitrarily, or unreasonably." Section 39–5–3. This court must then determine whether the evidence supports the commission's findings. If there are deficiencies in the report, the case must be remanded to the commission to correct those deficiencies. Rhode Island Consumers' Council v. Smith, 111 R.I. 271, 277–78, 302 A.2d 757, 762–63 (1973).

I

TRAINING–LABOR COSTS

The company asserts that the commission erred by disallowing training-labor costs from the total CIS cost to be capitalized, giving three reasons: (1) the commission's disallowance constitutes retroactive rate making, (2) the commission applied the wrong evidentiary standard, and (3) the

assumption of double recovery is inconsistent with the factual record.

■ Retroactive rate making occurs when the commission or party attempts to use current rates to recover current expenses while also adjusting for over- or underrecoveries in past periods. There is a ban on retroactive rate making to prevent such corrections from occurring. *See Narragansett Electric Co. v. Burke*, 119 R.I. 559, 570, 381 A.2d 1358, 1364 (1977) (rates must be prospective). The company seeks to persuade this court that the double recovery that the commission has prevented in disallowing training labor associated with the CIS's costs, relying on the division's "assumption" that operational expense was reduced when the company decided to capitalize these costs, constitutes retroactive rate making. We are of the opinion that the commission clearly based its decision on Effron's testimony that inclusion of these costs would result in double recovery for the company, a proposition to which the company failed to object or respond through rebuttal evidence.

Preventing double recovery is not the same as retroactive rate making. The double-recovery argument is to prevent the company from recovering certain amounts for capitalized training labor, those same amounts that it expensed as operational labor costs in the prior rate case, docket No.1914. This action then does not constitute retroactive rate making but instead is a prohibition on requiring paying customers to pay twice for amounts incurred once by the company.

The company contends that the commission's exclusion of $859,000 in training-labor costs from the rate base constitutes error as retroactive rate making. Rates must be prospective in nature, not designed to recoup past losses or adjust for underestimating expenses. *Providence Gas Co. v. Burke*, 475 A.2d 193, 197 (R.I.1984); *Narragansett Electric Co. v. Burke*, 122 R.I. 13, 22, 404 A.2d 821, 827 (1979). The company's argument is without merit because the commission's rationale for disallowing training-labor costs is its reliance on Effron's characterization that allowing this amount into the rate base would result in double recovery of the same costs. Absent any evidence from the company that its training-labor amount was, in fact, not part of the labor expensed in the prior rate case, the company's retroactive rate-making argument is erroneous. Mere disallowance of the costs does not indicate that the commission made its disallowance from the rate base to adjust a prior surplus.

■ The company next asserts that the commission applied an incorrect evidentiary standard, maintaining that the proponent of a claim, the division in this case, has the burden of proving that claim. In this case the company states that the commission relied on the erroneous assumption that labor costs included in the CIS cost reduced operational-labor expenses dollar for dollar. The company charges that the commission erred below in placing the burden on the company to disprove the assumption, stating that "it is incumbent upon the *Division* to prove its assertion."

In *Providence Gas Co. v. Burke*, 475 A.2d at 199, the court found that because the expert witness was knowledgeable and well qualified, and there was no contradictory evidence presented to the expert's testimony, the commission's ruling was justified. "As the party seeking rate relief, the company has the burden of establishing its entitlement to such relief." *Interstate Navigation Co. v. Burke*, 465 A.2d 750, 758 (R.I.1983); *see Providence Gas Co. v. Burke*, 419 A.2d 263, 268 (R.I.1980). Section 39–3–12 mandates that "the burden of proof to show that the increase is necessary in order to obtain a reasonable compensation for the service rendered shall be upon the public utility." This court has noted that the Legislature adopted the "general principle that a moving party must prove its case." *United States v. Public Utilities Comm'n*, 120 R.I. 959, 963, 393 A.2d 1092, 1094 (1978). In the present case, the division's expert, Effron, testified that to allow expenses to be capitalized now and added to the rate base would constitute double recovery. The company did not object to this characterization, nor did it offer any rebuttal testi-

mony. The commission expressly relied upon and adopted Effron's testimony, finding it competent legal evidence upon which it could rely in making its determination regarding inclusion or exclusion of these labor costs in the total amount capitalized and computed into the rate base. We find this to be a reasonable basis for the commission's decision, fairly supporting the order. We are therefore compelled to affirm the commission's finding.

■ The company next asserts that the commission erred by its disallowing capitalization of training-labor costs associated with the CIS because the assumption of double recovery is inconsistent with the factual record. It contends that the labor expense, which was included in the prior rate case, and the training labor associated with the CIS are not the same. Further, it claims that if there was double recovery, profit should have increased, which did not actually occur. These issues are presented now, on appeal. As stated previously, the burden of proof rests with the company to support its proposed rate increase with substantial evidence. The company failed to raise the aforementioned issues during the hearing before the commission and failed to sustain its burden of proof. For the court now to consider the merits of these arguments on appeal would require it to engage in factfinding, a function it is statutorily prohibited from doing. We are of the opinion that the commission did not err in disallowing capitalized training-labor costs, considering them to constitute double recovery. The inconsistencies in facts to which the company refers are mere conjecture on its part, unsupported by any evidence in the record of the hearings before the commission. To examine these arguments now is beyond the scope of our review, and we decline to do so. We are of the opinion that the commission's decision regarding training labor is supported by the facts of the case, by the opinion of the division's expert witness, and by the failure of the company to object to or present any contrary testimony.

## II

## AFUDC ACCRUAL

The company asserts that the commission erred with respect to the AFUDC. First, the company maintains that the commission's disallowance of $300,000 in AFUDC costs accrued from September through November, as a result of its prohibiting accrual of these costs as of September 1, 1990, was improper absent any showing of imprudence by the company in delaying implementation of the CIS. Second, it charges that the commission improperly ignored costs associated with the CIS that were incurred after November 1990 and continued through the completion date of May 1991.

In this case the commission stated that it relied on the company's rationale for the delay in determining that the system could have been implemented by September 1, 1990. This court must now determine whether this decision was, in fact, lawful and reasonable. To affirm the commission's order, therefore, support must exist for its decision to suspend accrual of the AFUDC as of September 1, 1990. The facts on which the commission relied in issuing its order must demonstrate a result reasonably based on those facts. *Rhode Island Consumers' Council v. Smith*, 111 R.I. at 277, 302 A.2d at 762.

■ It is well-settled law that when the end result of the commission's findings is fair and reasonable, this court will not interfere with the methodology utilized by the commission. *In re Woonsocket Water Dep't*, 538 A.2d 1011, 1014 (R.I.1988); *Narragansett Electric Co. v. Burke*, 475 A.2d 1379, 1386 (R.I.1984). The company must show that the commission abused its discretion. *Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 414, 368 A.2d 1194, 1205 (1977). In the case before us, we do not find that the facts provided the commission with a reasonable basis for disallowing the AFUDC as of September 2, 1990, or that this end result was fair or reasonable. We are of the opinion that in making its determination to adjust AFUDC

accrual negatively, the commission abused its discretion.

■ The division presented, and the commission relied on, no evidence of impropriety or imprudence in the company's business-judgment decision to delay the CIS's implementation until a time later in the heating season when the company was less busy and after more testing could be conducted. The company's evidence, explaining the nature of the CIS, the testing process, and the reasons for delay because of potential implementation problems, demonstrated sound business judgment on the part of the company in order to maximize efficiency of the CIS and minimize customer-service disruption. The company should not be penalized for its diligence in the absence of contrary evidence demonstrating imprudence. Because there was no evidence indicating imprudent company decisions in delaying implementation of the CIS, we are of the opinion that the commission acted arbitrarily and unfairly in so limiting AFUDC accrual, fashioning a clearly, palpably, and grossly unreasonable adjustment. The commission relied on company testimony regarding construction and planned implementation of the CIS and decided that the system could have been functioning as of September 1, 1990. The commission's decision does not find support in the evidence but instead is a clearly unreasonable and arbitrary extension of the company's testimony. In fashioning this remedy, the commission did not logically extend the company's testimony. We find it unfair and unreasonable to the company, relying on the evidence presented, to expense prudently incurred capital costs and not be able to recover them through customers' rates. Therefore, we conclude that the commission improperly removed $300,000 from the rate base, $100,000 for each month for September, October, and November. The commission is hereby ordered to include $300,000 for AFUDC costs in the total CIS cost.

The same principles as stated above also apply to the company's contention that the commission ignored the costs for the AFUDC that accrued after November 1990.

For purposes of docket No.1971, however, the issues and costs upon which the commission heard facts and made determinations involved estimated amounts as of November 30, 1990. Subsequent rates and costs are unknown because they were not presented in the rate case, docket No.1971. The company's claim regarding these amounts is therefore not justiciable. This court cannot properly decide an issue or hear facts not previously before the commission because this practice would relegate to the court the function of factfinder. As we previously stated, this court is statutorily prevented from engaging in factfinding. Therefore, we decline to order the commission to include in the rate base accrual of the AFUDC after November 1990.

For the reasons stated, the company's petition for certiorari is granted. The report and order of the Public Utilities Commission is affirmed in part and quashed in part. The commission's order disallowing the inclusion of training-labor costs in the total CIS costs to be capitalized and included in the rate base is affirmed. The order excluding $300,000 in AFUDC costs, accrued from September 1990 to November 1990, is hereby quashed. We direct the commission to include $300,000 in the rate base. The records certified to this court are remanded to the Public Utilities Commission with our decision endorsed thereon.