## TOWN OF NARRAGANSETT

v.

## James J. MALACHOWSKI et al.

### No. 91–573–M.P.

Supreme Court of Rhode Island.

March 1, 1993.

Mark McSally, Providence, for plaintiff.

Charles J. McGovern, McGovern, Noel & Benik, Providence, Julio C. Mazzoli, Asst. Atty. Gen., Walton Hill, King of Prussia, PA, Ronald Gerwatowski, Narragansett Elec. Co., Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on a statutory petition for certiorari brought by the town of Narragansett (petitioner or town) pursuant to G.L.1956 (1990 Reenactment) § 39–5–1 against James J. Malachowski, Lila M. Sapinsley and Paul E. Hanaway in their capacities as chairman and members of the Public Utilities Commission (commission);

the Wakefield Water Company (company); and the Division of Public Utilities and Carriers (division). In its petition, the town seeks reversal of two orders of the commission issued in docket No. 2006. The town advances three arguments in support of its petition for certiorari. First, the petitioner contends that the commission's order approving the agreement and settlement negotiated by the company and the division, which related to a general rate increase for the company, violated the statutory notice provisions of G.L.1956 (1990 Reenactment) § 39–3–11. Second, petitioner contends that the commission's denial of the town's motion to intervene out of time and its motion to reopen public hearing constituted an abuse of discretion by the commission. Third, petitioner argues that the notice given of the changes in the proposed rate increase did not comply with G.L.1956 (1988 Reenactment) § 42–35–9. We deny the town's petition and affirm the commission's orders issued in docket No. 2006. The facts insofar as pertinent to this petition for certiorari are as follows.

On March 15, 1991, the company filed a notice of proposed changes in rates with the commission. Filed and published in compliance with §§ 39–3–10 and 39–3–11, the proposed rate schedules were designed to collect additional revenues in the amount of $439,608 or an overall increase of 28.39 percent. This increase was to become effective on April 14, 1991. Generally the company proposed in its filing to adopt a rate tariff which would consist of a customer-service charge plus a volume charge reflecting the volume of water actually used by the customer. The company's filing included prefiled testimony and exhibits, as well as references to revised tariff sheets. Those references indicated a specific increase in rates for the company's two wholesale customers, petitioner and the town of South Kingstown (South Kingstown).

The wholesale-customer class is also referred to as the sales-for-resale customer class. In a public utility matter where the utility in question is water, the sales-for-resale class purchases water at a discount rate from the company in order to resell the water to the wholesaler's customers. In the present filing, the company had proposed a rate for its wholesale customers of $0.54 per thousand gallons of water. Additionally a notice contained in the rate-increase filing stated that "[t]he proposed increase has been allocated to the various classes of customers through a cost allocation study."

Prior to the filing, on March 11, 1991, the company's vice president and manager, Stanley J. Knox (Knox), sent letters to Vincent Izzo and Steven Alfred, in their capacity as town managers of the two sales-for-resale customers (hereafter wholesale), petitioner, and South Kingstown, respectively. In accordance with § 39–3–12.1, the communication informed the town managers that the company was applying for a rate increase and offered to be available to answer any questions either customer might have had with respect to the rate-increase application.

Subsequent to the filing of the proposed change in rates, the commission, pursuant to § 39–3–11, issued a suspension order that suspended the effective date of the rate increase for five months. The dual purpose of the suspension order was to allow time for the commission to conduct a "thorough and complete" investigation of the proposal and to hold public hearings with respect to the rate increase.

Thereafter, on or about May 13, 1991, the commission clerk mailed a copy of the schedule for the matter's docket to the division, the company, and other interested parties, including the town managers of petitioner town and South Kingstown. Contained within the schedule was a notification to petitioner that the date to file a motion to intervene had been extended to May 17, 1991, and that the date for the division, the company, and the intervenors, if any, to file direct testimony with respect to the filing was July 23, 1991. On June 4, 1991, the commission sent a revised schedule to the parties, including the town managers of petitioner town and South Kingstown. This second notification also contained the dates to intervene and to file testimony in this matter. On July 23, 1991,

the division filed its direct testimony. As of that date, petitioner had neither intervened nor filed direct testimony in the case.

Pursuant to a commission notice dated August 6, 1991, the hearings in this matter were scheduled to begin on August 19, 1991, and a public hearing was to be held on August 20, 1991, in South Kingstown. After conducting an investigation of the company's proposal, the division, in its direct testimony filed on July 27, recommended that the company's request to increase rates be reduced to $282,532 or 18.24 percent over revenues at existing rates. Thereafter, the division and the company engaged in settlement discussions relating to the company's revenue requirements, as well as its rate design. The division and the company advised the commission that a settlement was probable and that the parties would likely file a stipulation prior to the date the hearings were scheduled to begin. Consequently on August 20, 1991, the company and the division filed an agreement and settlement with the commission.

Generally the agreement and settlement provided that the company would implement new rates designed to collect annual revenues in the approximate amount of $1,882,549. This figure represented an increase in annual revenues of approximately $320,000 or 20.6 percent over revenues at existing rates. Of significance for the purposes of this petition was the rate change proposed to be charged to petitioner as a wholesale customer. Apparently the rate in existence prior to the filing of the notice of proposed changes in rates was $0.44 per thousand gallons of water. As was previously noted, the rate proposed in the filing was $.54 per thousand gallons of water. The rate agreed to by the company and the division as part of the agreement and settlement was $0.76 per thousand gallons of water.

On August 21, 1991, a hearing was held to give the commission the opportunity to question the parties with respect to their proposed agreement and settlement. Gerald M. Hill (Hill), director of rates, economics and accounting for General Waterworks Management and Service Company, and Knox testified on behalf of the company. Stephen Scialabba (Scialabba), chief accountant, testified on behalf of the division. Both Hill and Scialabba testified that, in their opinion, the agreement and settlement was fair and equitable to both the company and to ratepayers.

The commission held a hearing on August 27, 1991, to elicit public testimony regarding the company's proposed rate increase. Representatives of petitioner town and South Kingstown expressed concern over the fact that the original filing on March 15 proposed an increase for the company's wholesale customers that was $0.22 less than the increase embodied in the agreement and settlement. In consideration of these concerns, the company and the division reviewed the wholesale rate. On September 5, 1991, Scialabba informed the commission that the company and the division had engaged in further discussion concerning the proposed wholesale rate and were submitting an alternative wholesale rate of $0.66 per one thousand gallons of water.

On September 10, 1991, petitioner filed a motion to intervene out of time and a motion to reopen the public hearing. Both the division and the company objected to the motions. The commission denied both motions and approved the agreement and settlement, as modified by the September 5 communication from the company and the division.

In support of its petition the town raises three issues. Further facts will be supplied as necessary to address these issues.

I

## NOTICE REQUIRED FOR CHANGES IN RATE FILINGS

 The petitioner argues that the agreement and settlement that increased rates for wholesale customers to $0.66 per one thousand gallons of water constituted a change in rates that precipitated further notice to the town pursuant to § 39–3–11. We disagree. At the outset, however, we note that our power to review regulatory

proceedings is limited. In examining a decision or an order of the commission, this court does not consider conflicting evidence adduced during the proceeding or engage in independent factfinding. *South County Gas Co. v. Burke*, 551 A.2d 22, 24 (R.I. 1988). The court merely ascertains whether the decision or order was "lawful, reasonable, and well supported by the evidence." *Providence Gas Co. v. Malachowski*, 600 A.2d 711, 714 (R.I.1991).

Turning to the present case, we find it axiomatic and not challenged by the parties that the requirements that a public utility must satisfy when applying for a rate increase are set forth in § § 39-3-10 and 39-3-11. Specifically, § 39-3-10 requires that "[e]very public utility shall file with the public utilities administrator within a time to be fixed by the administrator, schedules * * * showing all rates, tolls, and charges which it has established." Any subsequent changes made to that original filing are governed by § 39-3-11. Section 39-3-11 reads in pertinent part as follows:

"Notice of change in rates—Suspension of change—Hearings.—(a) No change shall be made in the rates, tolls, and charges which have been filed and published by any public utility in compliance with the requirements of § 39-3-10, except after thirty (30) days notice to the commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force, and the time when the changed rates, tolls, or charges will go into effect. Whenever the commission receives notice of any change or changes proposed to be made in any schedule filed under the provisions of § 39-3-10, the commission shall hold a public hearing and make investigation as to the propriety of the proposed change or changes."

There is no dispute that the company's original rate-increase filing fully complied with § § 39-3-10 and 39-3-11. Likewise, the commission acted in accordance with its own statutory obligations by holding a public hearing and conducting an investigation into whether the proposed rate changes were fair and equitable. The dispute between the parties arose in respect to the provisions of the settlement and agreement filed with the commission on August 20, 1991. It is petitioner's contention that, in filing the agreement and settlement, the company and the division filed a "new proposed rate increase" that triggered the provisions of § 39-3-11. Specifically, petitioner argues that the parties to the agreement violated the thirty-day-notice provision because the commission's last notice regarding hearing dates on the matter was distributed to the interested parties on August 6, 1991, and the parties filed the agreement and settlement with the commission on August 20, 1991.

In its brief petitioner asserts that § 39-3-11 "clearly requires that *any* change in the rates charged by a public utility must comply with the notice requirements contained in the statute." According to petitioner's interpretation of § 39-3-11, anytime that a public utility company reaches an agreement with the division in respect to increased rates and files that agreement in lieu of the initial filing, this court should construe that agreement as a "new filing" requiring new notice and additional hearings. Although we have had occasion in the past to construe various provisions of title 39 of the General Laws, petitioner's proposed interpretation of § 39-3-11 is one of first impression for this court.

In support of its interpretation, petitioner cites this court's decision in *Town of Charlestown v. Kennelly*, 80 R.I. 148, 93 A.2d 728 (1953). In *Town of Charlestown* the Westerly Automatic Telephone Company filed a proposed rate increase with the public utilities administrator. The proposed schedule contained rate increases designed to produce additional revenue of approximately $146,000 annually. *Id.* at 149, 93 A.2d at 729. After taking the filing under advisement and allowing the parties to submit memoranda, the administrator rendered a decision and issued an order. *Id.* Under the administrator's order, the initial rate-increase filing, which would have increased revenue to approximately $146,000, was denied and dismissed. The order further directed the company to sub-

mit to the administrator a new schedule designed to produce annual revenue in an amount not to exceed $46,753. *Id.* at 150, 93 A.2d at 729.

The company complied with the order and submitted the revised rate schedule, which was subsequently approved by the administrator. *Id.* The town of Charlestown appealed the administrator's order to this court, contending that the filing of the revised schedule was a new filing that required notice to the public and a new hearing in the matter. *Id.* at 152, 93 A.2d at 730. In rejecting that contention, this court concluded that the town had misinterpreted the "denied and dismissed" language embodied in the administrator's order. *Id.* The town, we reasoned, had read that language as applying to the entire proceeding, not merely to the amount of increased revenue originally requested in the filing. *Id.* We concluded that the filing ordered by the administrator was not a new filing but rather "a submission to the administrator for his approval of a schedule of tariffs designed to effectuate the decision he had made in the existing proceedings." *Id.* at 152, 80 R.I. 148, 93 A.2d at 730.

In *Town of Charlestown* we found no specific statutory language that would have required the public utilities administrator to hold additional hearings in every revised schedule submitted for approval by a utility company pursuant to an administrator's order. *Id.* at 153, 93 A.2d at 731. However, petitioner argues that in *Town of Charlestown* this court alluded to requiring the administrator to issue further notice and to hold new hearings when confronted with such a procedural matter in the future. Specifically, petitioner directs our attention to the following language in the case.

"[W]here the amount of specific relief applied for is denied and alternative relief is granted in the one order, and a new schedule of revised rates is necessary to carry into effect the alternative relief and must be approved subsequently by the administrator in a second order, the better procedure would seem to suggest that before he enters his order of final approval of the new schedule he should give the objectors a reasonable opportunity to be heard on whether the rates and charges in such schedule are in conformity with the findings in the decision and first order." *Id.*

We do not depart from the recommendation enunciated in *Town of Charlestown* today. However, that recommendation is wholly inapplicable to the present case. In fact, petitioner, by its own admission, states that "this case is not within the same procedural posture" as *Town of Charlestown*. We agree. Unlike *Town of Charlestown*, at the time the company and the division agreed to the new wholesale rate, nothing had been approved by the commission. Furthermore, the commission's order indicated that the hearing referred to in *Town of Charlestown* is what is presently referred to as a compliance hearing. A compliance hearing is an opportunity for the commission to check the company's new rates for compliance with the commission's order. In other words, the company must show that it will be able to recover the amount of revenue authorized by the commission. It is important to note that no such hearing had been scheduled or held in respect to this matter at the time that the town had filed its petition for certiorari.

It is apparent that, given the "procedural posture" of the present case, petitioner should have intervened in order to protect its interests in the wholesale rate proposed in the company's March 15 filing. The record indicates that the cost-allocation study prepared by the company allocated 11.64 percent of the company's total cost of service to the company's two wholesale customers, petitioner and South Kingstown. As was previously indicated, one of the company's proposals was the adoption of a rate tariff consisting of a customer-service charge plus a volume charge. Applying that proposal to the wholesale customers, one finds that the cost-of-service study indicated a price of approximately $1.21 per one thousand gallons of water. However, the company's expert had recommended a rate of $0.54 per one thousand

gallons of water plus the customer-service charge, which was based on the average percentage increase requested by the company. The expert had stated that the recommendation for the wholesale rate was so far below the cost of service for "competitive reasons." Apparently in addition to purchasing water from the company, petitioner was able to purchase water from another municipality at a rate of $0.51 per one thousand gallons and the company's goal was to continue selling the majority of its wholesale volume to petitioner. It was with this purpose in mind that the company proposed the rate of $0.54 per one thousand gallons of water in its initial filing on March 15.

After reviewing the company's cost-allocation study, the division's expert agreed that competitive limitations existed in terms of the rate that the company could charge its wholesale customers. However, the expert stated that the competitive constraints were not so severe as the company had first indicated in its direct testimony. The expert reasoned that competition for petitioner's business would have come not from South Kingstown, but from the town of North Kingstown and, according to the expert, that town was not capable of providing much additional water to petitioner and was contemplating its own rate increase. Consequently the expert recommended that the rate for wholesale customers be set at $0.76 per one thousand gallons of water.

The petitioner's claim that the agreement and settlement triggered additional notice under § 39–3–11 and the court's holding in *Town of Charlestown* is without merit. This court has recognized that, in a filing for an increase on rates, the burden on the utility company is twofold. First, the company must establish that it requires the overall increase in rates. Second, the company must establish that the proposed rate schedule is nondiscriminatory. *New England Telephone & Telegraph Co. v. Public Utilities Commission,* 446 A.2d 1376, 1383–84 (R.I.1982); *Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* 121 R.I. 122, 126, 396 A.2d 102, 104 (1979); *United States v. Public*

*Utilities Commission,* 120 R.I. 959, 963, 393 A.2d 1092, 1094 (1978). Relying on the cost-allocation study, the company proposed a rate for its wholesale customers that was far below the cost of service. Utility companies are generally prohibited from offering preferred rates to its various customer classes save for "free or reduced rate service" to an elderly person. G.L. 1956 (1990 Reenactment) §§ 39–2–2, 39–2–4, and 39–2–5. Once a utility company proposes a rate increase, it is the function of the commission to determine whether the result to be achieved is a fair and reasonable rate "without unjust discrimination, undue preferences or advantages." *See* G.L.1956 (1990 Reenactment) § 39–1–1.

We have recognized that in performing that function, the commission is charged with the authority to restructure rates in order to eliminate or to mitigate past discrimination. *Blackstone Valley Chamber of Commerce,* 121 R.I. at 127, 396 A.2d at 105. Of particular import for the case at hand is the commission's right, upon review of the company's cost-allocation study and the division's recommendations, to reallocate the cost of service among customer classes. *Id.; see United States v. Public Utilities Commission,* 120 R.I. at 968, 393 A.2d at 1097 (in addition to a cost-of-service study, the commission's consideration of other factors such as "value of service to the community, historical rate design, adequacy of service, environmental considerations, the public benefit and the like, may warrant a departure from or a modification of the rates dictated by cost-of-service"). Therefore, because the commission is charged with the authority to reallocate costs among classes, no party has the right to assume that a rate-increase filing will not be subject to changes prior to implementation.

Turning to the present case, we note that the company's expert had acknowledged that the $0.54 per one thousand gallons of water rate for the wholesale customers was below the cost of service. In light of the discriminatory rate, the division presented evidence to the commission contesting the level of subsidization proposed by

the company for the wholesale class. In its direct testimony, the division recommended the alternative rate of $0.76 per one thousand gallons of water, which moved the rate for the wholesale class closer to the actual cost of service without completely eliminating the subsidization realized by the wholesale customers. At the time that the commission entertained public testimony on the rate filing, it was free to accept or reject either party's proposal and allocate the costs so as to achieve a nondiscriminatory result. *See Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, 121 R.I. 122, 396 A.2d 102 (1979). The agreement and settlement set the wholesale rate pursuant to the division's recommendations as proposed in its direct testimony. As was previously indicated, however, the company and the division later revised the wholesale rate to $0.66 per one thousand gallons of water. It was the alternate rate which the commission reviewed and upon which it decided that the rates, as stipulated in the agreement and settlement, were "fair, reasonable and therefore approved."

It has been recognized by this court that the commission's power extends to devising a rate scheme that may vary from that proposed by the utility company. *Rhode Island Chamber of Commerce Federation v. Burke*, 443 A.2d 1236, 1237 (R.I.1982). It is self-evident then that the substitution of rates before the commission issues a final order is an essential and regular aspect of the rate-making process.

 In this case petitioner was on notice as of March 15, 1991, that the company was requesting a rate increase. The commission's order showed that the company's rate history from 1972 to 1983 indicated a rate-increase filing approximately every two to three years. However, during that time the amount granted by the commission was consistently lower than the amount requested by the company. In an ongoing rate case, as in the present case, the fact that certain rates proposed in the initial filing are later replaced by new rates, either at the suggestion of the parties or by the commission in the exercise of

its powers, does not signify the termination of the original filing and the beginning of a new filing. Consequently since the initial filing is still before the commission, the notice and hearing requirements of § 39–3–11 are not triggered. On the contrary, to construe the statute in this manner would certainly give rise to utility companies, the division, and the commission's engaging in virtually infinitely protracted and inefficient rate hearings. Without doubt, the protraction and inefficiency of the process would culminate in the commission's failure to establish a just and equitable system of rates to all concerned parties, including the utility company and its customers. *Rhode Island Chamber of Commerce Federation*, 443 A.2d at 1237.

In the case at bar the company fully complied with the statutory obligations set forth in § 39–3–11. The company's and the commission's actions in this matter were likewise consistent with this court's holding in *Town of Charlestown v. Kennelly*. If petitioner wanted to protect its interests in the wholesale rate proposed in the March 15 filing, it should have filed a timely motion to intervene in the matter. Having failed to do so, petitioner is now barred from challenging the commission's determination, whether based upon its own findings or an approved settlement. We shall now address petitioner's claim that the order denying its motions to intervene out of time and to reopen public hearing was an abuse of the commission's discretion.

II

MOTION TO INTERVENE OUT OF TIME AND MOTION TO REOPEN PUBLIC HEARING

On September 10, 1991, petitioner filed two motions in this matter: a motion to intervene out of time and a motion to reopen public hearing. Both the company and the division filed objections to petitioner's motions. In support of these motions petitioner argued (1) that it did not receive proper notice of the new rates, (2) that it did not receive an opportunity to comment on the proposed rate, and (3) that the

agreement and settlement required further notice and hearing pursuant to § 39–3–11.

■ The commission denied both motions on October 28, 1991. We have previously addressed petitioner's argument in respect to the notice requirement of § 39–3–11 and have found it to be without merit. In its brief, however, petitioner contends that the commission's denial of these motions constituted an abuse of discretion. We respectfully disagree with petitioner's contention and shall now address this issue at greater length.

Then–Rule 1.8(e) (now amended as Rule 1.13(g)) of the commission's Rules of Practice and Procedure as it existed at the time of this controversy reads in pertinent part as follows:

"Any person desiring to intervene in a proceeding initiated by an application for a rate schedule change shall file a notice of intervention or motion to intervene within thirty (30) days after the publication of the notice of filing as provided by these rules. *Except for good cause shown,* intervention shall not be permitted after that date." (Emphasis added.)

There is no dispute that, if one considers petitioner's failure to make a timely intervention, the appropriate action for it to have taken was to file a motion to intervene out of time. Therefore, pursuant to the applicable section of Rule 1.8(e) petitioner was compelled to demonstrate "good cause" before it would be allowed to intervene in this matter.

According to the commission's order, "good cause" in this matter would have been based on an assertion by petitioner that it was prepared to present additional evidence relating directly to the rate for the wholesale-customer class. The commission suggested in its order that petitioner could have proffered the testimony of an expert who could have stated that in his or her opinion the company's cost-of-service study was flawed on the issue of the rate for the wholesale customers.

In its brief petitioner argues that the "good cause standard," as propounded by the commission's order, placed petitioner in the position of having two weeks in which to retain an expert and prepare direct testimony. The petitioner argues that such a position was unfair in light of the fact that both the division and the company engaged a much greater length of time to prepare their testimony. This position, contends petitioner, was the direct result of the commission's unreasonable standard, the exercise of which constituted an abuse of discretion.

■ Although we can certainly appreciate the difficult time schedule with which petitioner was confronted, we must be mindful that this time constraint was of petitioner's own making by reason of its failure to intervene at an earlier stage of the proceeding. Moreover, our role in the review of public utility rate-setting proceedings is limited. Pursuant to § 39–5–1, this court is vested with the authority to review orders and decisions of the commission in order to weigh their validity or reasonableness. We do not, however, sit as either a policy-making body or a factfinder in commission matters when reviewing rate-making cases and utilities regulation. *Providence Gas Co. v. Malachowski,* 600 A.2d at 714; *Block Island Power Co. v. Public Utilities Commission,* 505 A.2d 652, 653 (R.I.1986); *Providence Gas Co. v. Burke,* 119 R.I. 487, 497, 380 A.2d 1334, 1339 (1977). In general, this court will yield to the commission's factfinding capacity in deciding whether the decision or order was "lawful, reasonable, and well supported by the evidence." *Providence Gas Co.,* 600 A.2d at 714.

In the recent case of *Providence Gas Co. v. Malachowski,* we further elaborated upon the limited authority granted by the Legislature to this court in reviewing utility rate cases. Specifically, we stated that

"[t]he commission must provide sufficient findings and evidence upon which it bases its decision in order for the court to make a reasoned determination of whether the commission acted 'illegally, arbitrarily, or unreasonably.' Section 39–5–3. This court must then determine whether the evidence supports the commission's findings. If there are deficien-

cies in the report, the case must be remanded to the commission to correct those deficiencies." 600 A.2d at 714.

In the case before us, the commission set forth with great specificity its reasons for denying petitioner's motion to intervene out of time. The order documented the procedural travel of this case and noted that petitioner had from March 15, 1991, the date of the initial filing, until May 17, 1991 within which to intervene and until July 23, 1991 to prepare and file any direct testimony. Additionally, owing to the suspension order issued by the commission pursuant to § 39-3-11(a), petitioner was afforded extra time to prepare direct testimony if it so desired. Furthermore, petitioner received from the commission clerk two separate notifications advising it of the deadlines in respect to intervening and filing testimony. In its own words, petitioner "had no objection to the proposed rate increase as initially filed and made a conscious decision not to expend any resources to intervene in the pending hearing." In the commission's view, petitioner was fully apprised of the fact that the filing was before the commission and that additional testimony would be filed that could possibly alter the rates as initially filed. Moreover, petitioner's motion simply failed to indicate by its own terms or in any supporting document that it was prepared to offer any testimony that would have met its burden under Rule 1.8(e). Consequently the commission concluded that deliberate inactivity on the part of petitioner could not form the basis for "good cause" to allow it to intervene later in this matter.

Our review of the case leads us to conclude that the commission did not act "illegally, arbitrarily, or unreasonably," § 39-5-3, in determining on the basis of the evidence before it that petitioner had failed to meet the standard set forth in Rule 1.8(e). Therefore, we shall not disturb its findings in respect to rejecting petitioner's motion to intervene out of time.

Turning now to petitioner's motion to reopen public hearing, we similarly conclude that the commission's order denying the motion was not an abuse of discretion.

Rule 1.25(b) of the commission's Rules of Practice and Procedure provides the process by which the commission may reopen public hearings. The rule reads as follows:

"At any time prior to the filing of a decision, after notice to the parties and opportunity to be heard, the Commission may reopen the proceeding for the reception of further evidence on its own motion, if the Commission has reason to believe that conditions of fact or of law have so changed as to require, or that the public interest requires, the reopening of such proceeding."

In denying petitioner's motion, the commission concluded that since petitioner had failed to intervene, it was not a "party" and therefore had no right to move to reopen the hearing under Rule 1.25. Having previously found that the commission did not abuse its discretion in denying petitioner's motion to intervene out of time, we shall not disturb the order denying petitioner's motion to reopen a public hearing at petitioner's request.

III

NOTICE REQUIREMENTS UNDER
THE ADMINISTRATIVE
PROCEDURES ACT

■ The final issue before us concerns the applicability of the provisions set forth in the Administrative Procedures Act, G.L. 1956 (1988 Reenactment) chapter 35 of title 42(APA). Specifically, petitioner contends that the notice given by the company and the commission of the changes in the initial rate-increase filing failed to comply with § 42-35-9. Although the present matter meets the definition of a "contested case" as set forth in the APA, we are constrained to hold that the notice provisions of § 42-35-9 are not applicable in the present matter.

The regulation of public utilities and carriers is governed by those statutes promulgated by the Legislature and set forth in title 39 of the General Laws. Consequently if a specific section of title 39 would be dispositive of a particular matter relating to the regulation of public utilities and car-

riers, then this court in its review of an order issued by the commission will look to that section of the law.

In the case before us, the company filed its request for a rate increase pursuant to § 39–3–11. Consequently all action subsequently taken by the company and the commission with respect to the initial filing was subject to the provisions of § 39–3–11, including both the company's obligation to notify its customers of the filing and the commission's obligation to hold a public hearing on the propriety of the rate increase. The notice requirements under the APA are inapplicable when, as in this case, title 39 explicitly directs the parties on the appropriate course of action in a rate proceeding.

We have previously addressed the issue of proper notice under § 39–3–11 in this opinion. We concluded that both the company and the commission fully complied with the statutory notice provisions of § 39–3–11 and that the changes to the initial filing did not precipitate a requirement of further notice to the petitioner under the statute. Therefore, it is quite clear that the petitioner had received all the notice that was due under the applicable law and had simply failed to follow the proper course of action and intervene in the first instance. The petitioner's failure to protect its interest in the proposed wholesale rate by intervening in the matter prevents it now from petitioning this court to reverse the commission's order issued in docket No. 2006.

For the reasons set forth above, the petition for certiorari is denied, the writ previously issued is quashed, and the orders of the commission are affirmed. The papers of the case are remanded to the commission with our decision endorsed thereon.