PROVIDENCE GAS CO.

v.

James J. MALACHOWSKI et al.

PROVIDENCE GAS CO.

v.

PUBLIC UTILITIES COMMISSION.

Nos. 93–462–M.P., 93–559–M.P.

Supreme Court of Rhode Island.

April 5, 1995.

Michael P. DeFanti, Robert M. Duffy, Hinckley, Allen, Snyder & Comen, Providence, for plaintiff.

Adrienne Southgate, PUC, Patricia French, Sp. Asst. Atty. Gen., for defendant.

## OPINION

SHEA, Justice.

These matters came before the Supreme Court on a statutory petition for certiorari brought by the Providence Gas Company (Providence Gas or the company), pursuant to G.L.1956 (1990 Reenactment) § 39–5–1.[1] The company seeks review of the report and order of the Public Utilities Commission (PUC or the commission) dated August 18, 1993. By that report and order, the PUC deferred certain expenses sought by the company to a pending rate case, docket No. 2082. In formulating the order, the PUC refused to allow the company to include as part of Integrated Resource Plan (IRP) expenses the full amount of costs incurred by the company in implementing the IRP and designing, implementing, and monitoring its demand-side management programs. For the reasons set forth below, we affirm the orders of the PUC.

Providence Gas seeks reversal of two portions of the PUC report and order issued on October 14, 1993. The disputed issues relate to the disallowance of company expenditures made in connection with its Supplemental Executive Retirement Plan (SERP) and the PUC's exclusion from rate-base capital costs associated with deferred rate-case expenses. These two issues focus on the more fundamental question of whether the PUC can deny recovery of incurred expenses because the expenditure benefits the shareholder. We conclude that the PUC has the latitude to take such action.

On October 14, 1993, the PUC issued *In re Providence Gas Company,* docket No. 2082, order No. 14311 (report and order). Providence Gas, in its direct case, originally requested $11.4 million in additional revenues to be added to its test-year revenues of $200,946,000. The PUC allowed the company an increase of only $694,000 to reflect reasonable expense adjustments. In the instant case, the company seeks review of two PUC adjustments amidst the $8.3 million in overall disallowances, exclusions, and reductions of proposed adjustments to the company's expenses and rate base. In the first challenged adjustment, the PUC determined that the company's proposed operating-expense recovery for future SERP payouts was unreasonable and excessive and of no direct benefit to ratepayers. The rate-year adjustment proposed by Providence Gas and eliminated by the PUC amounted to $35,000.

In the second challenged adjustment, the PUC removed a proposed adjustment for deferred rate-case expense of $263,250 from rate base, lowering the company's proposed return by $26,000. At the same time the PUC included in operating expenses a two-year recovery and amortization period for the company's current rate-case expense of $351,000. The PUC considers this a policy-driven break-even approach and applies it consistently to the utilities that fall under its jurisdiction. Accordingly, to permit a result such that ratepayers alone would bear the cost of both operating expenses and rate-base treatment for rate-case expense would be excessive and would not reflect appropriate and important policy objectives.

The PUC has carefully crafted precedent that requires all utilities, including Providence Gas, to demonstrate "unusual circumstances" in order to place unamortized and deferred-rate-case expenses in the rate base.

---

**1.** These matters are identical cases, neither of which was withdrawn, and therefore have been consolidated for disposition.

We conclude that this precedent is reasonable, lawful, predictable and consistent. In proceedings before the PUC, a utility has an affirmative burden of production and proof on the reasonableness and necessity of the elements, which make up its request for a rate increase. General Laws 1956 (1990 Reenactment) § 39-3-12. Providence Gas bore the burden of proving affirmatively both the necessity of SERP as an operating expense and the necessity of the placement of its deferred rate-case expense in rate base. We concur with the finding made by the PUC that Providence Gas did not sustain its burden on either. We shall address each issue separately below with such other facts as may be helpful to the discussion.

 It is uncontroverted that judicial review of PUC decisions is limited. In examining the issues, this court's review is limited in the following manner:

"This court does not engage in factfinding with respect to decisions of the Public Utilities Commission. 'That is the commission's role; ours is to determine whether the commission's decision and order are lawful and reasonable and whether its findings are fairly and substantially supported by legal evidence and sufficiently specific to enable us to ascertain if the facts upon which they are premised afford a reasonable basis for the result reached.'" *Providence Gas Co. v. Burke*, 475 A.2d 193, 199 (R.I.1984) (quoting *Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 277, 302 A.2d 757, 762 (1973)).

This court is not a policy-making body in matters regarding utility rate making and regulation. *Providence Gas Co. v. Malachowski*, 600 A.2d 711, 714 (R.I.1991). In *Providence Gas* we elaborated upon the limited authority granted by the Legislature to this court in reviewing utility rate cases. We specifically stated:

"The commission must provide sufficient findings and evidence upon which it bases its decision in order for the court to make a reasoned determination of whether the commission acted 'illegally, arbitrarily, or unreasonably.' Section 39-5-3. This court must then determine whether the evidence supports the commission's findings. If there are deficiencies in the report, the case must be remanded to the commission to correct those deficiencies." *Providence Gas Co. v. Malachowski*, 600 A.2d at 714 (citing *Rhode Island Consumers' Council v. Smith*, 111 R.I. 271, 277-78, 302 A.2d 757, 762-63 (1973)).

This court must yield to the PUC's factfinding capacity. *Town of Narragansett v. Malachowski*, 621 A.2d 190, 198 (R.I.1993). We do not sit as a factfinder in reviewing utility rate cases, *Block Island Power Co. v. Public Utilities Commission*, 505 A.2d 652, 653 (R.I. 1986), and in determining whether the decision is based on reasonable evidence, this court does not evaluate the technical, policy-driven, sophisticated arguments and formulas presented to the PUC. *Rhode Island Consumers' Council v. Smith*, 111 R.I. at 280, 302 A.2d at 764. We merely decide "whether the end result * * * is just and reasonable." *Id.*

 Providence Gas asserts that the PUC denied recovery of the company's SERP expenses after the close of the rate proceeding and with no evidentiary basis on the record. Providence Gas asserts that SERP, as a form of management compensation, is a prudent expense and that a prudent expense cannot be disallowed "simply because it benefits shareholders." Last, the company alleges that the PUC's denial of SERP confiscates shareholder capital and denied the company "an opportunity to earn the fair return to which it is entitled."

Providence Gas alleges that it suffered unfair surprise when the PUC denied recovery of its SERP expenses. The company established a retirement plan, its SERP, to enhance the pension benefits of two recently hired executives. Although the company had never previously requested authorization from the PUC to include SERP expense in base rates, it presented its requested SERP expense as a proposed "normalization adjustment" consisting of a single line item in its exhibits to the direct prefiled testimony of its controller and assistant treasurer. The PUC issued a data request to Providence Gas requesting further information on all the normalization adjustments unaccompanied by testimony on direct examination. In his di-

rect testimony, the PUC's expert witness warned that "[f]ailure by [the company] to provide information justifying its [management] compensation levels in its rebuttal testimony * * * would justify an adjustment to compensation levels for ratemaking purposes."

The company responded by providing testimony and amendments on SERP to its originally filed exhibits. The company's SERP was now properly identified and the PUC next orally examined the company's controller and assistant treasurer regarding whether SERP was an appropriate cost-of-service expense and whether the amount included in the rate year was reasonable. A lengthy exchange ensued. Afterward, but before the issuance of the PUC's report and order, the PUC asked for a single data request specifically on the SERP issue. The PUC, on its own motion, notified Providence Gas that, absent any objection, the complete response upon receipt would be entered as a full exhibit into the record. No objection was entered, and the total response discussing the current financing of future expenses under SERP was entered as an exhibit.

The PUC adopted all evidence offered by the company on the SERP issue and, on its own motion, permitted the company's uncited and unsupported arguments as presented at length in its reply brief to the PUC, in deciding whether SERP was a reasonable operating expense that directly benefited ratepayers. It is abundantly clear from this chronology and the evidence presented that the PUC examined the SERP issue in a light most favorable to the company. The company's claims of unfair surprise are wholly without merit.

■ The PUC denied SERP because, in its judgment, the evidence presented by the company on SERP showed that it does not directly benefit ratepayers:

"What the SERP benefit does is send a message * * * that the Company will, for pension benefit purposes, act as if they have been employed by the Company for most of their productive employment years, when in fact they have not. If that is something the shareholders desire to have the Company do, that is their busi-

ness. We do not feel, however, that this is an economic burden that can reasonably be placed on the shoulders of the ratepayers."

We agree. The PUC rejected the company's attempt to reward executive talent for employment not dedicated to the company's ratepayers. The PUC's statement was clear: the SERP expense does not benefit ratepayers. The PUC rejected the SERP expense and called it an unreasonable and excessive expense that does not directly benefit ratepayers. The PUC's decision regarding SERP expenses was just, reasonable, lawful, and supported by legal evidence.

■ Providence Gas next asserts that the PUC's decision to exclude from rate base capital costs associated with deferred rate-case expenses is a decision that is unjust, unreasonable, and confiscatory of shareholder capital. The company's position is that

"shareholders [should be provided] with a rate of return on the capital invested to pay the current but deferred expenses. This recognizes that, pending recovery from customers, the Company must obtain funds to pay the expenses. These funds are acquired by borrowing * * * and equity capital * * * and the Commission must recognize that that capital has a cost."

To that end the company contests the exclusion of the deferred rate-case expenses from rate base and argues that the PUC made its decision to exclude it "not on the facts in evidence * * * but on its past practice." The company also alleges that the PUC denied the inclusion of deferred rate-case expense in rate base simply because shareholders benefit.

The PUC routinely permits regulated utilities in Rhode Island to include an amortized amount of current rate-case expense in operating expense for the rate year. *Block Island Power Co. v. Public Utilities Commission*, 505 A.2d 652 (R.I.1986). Furthermore, the PUC's Rules of Practice and Procedure allow any unamortized costs associated with prior rate cases to be added to operating expenses. Thus the amortization period matches the expected interval between rate cases. In the instant case Providence Gas requested the approved two-year amortiza-

tion period of the rate-case costs. As a result, for Providence Gas the current rate-case expense and unamortized prior rate-case expense was $351,000.

The issue boils down to whether the deferred rate-case expense should be placed in rate base, thereby permitting the company to earn a return on it paid for by the ratepayers, not whether the company should recover the full original cost of current, deferred, or unamortized rate-case expense. The full cost of these latter operating expenses is already borne by the ratepayers. In this case the PUC's removal of the proposed adjustment for deferred rate case expense of $263,000 from rate base lowered the company's proposed return by $26,000. The company argues that it should be able to place deferred rate-case expense in rate base; the PUC has long held that it cannot. *Block Island Power Co. v. Public Utilities Commission*, 505 A.2d 652 (R.I.1986); *In re Providence Gas Co.*, 63 P.U.R. 4th 602, 621 (1984).

The PUC has clearly articulated its policy reasons for disallowing deferred rate-case expense in rate base. The PUC's policy provides for the "ratepayers to pay the actual, prudently incurred rate case expenses over a period of time, while stockholders pay the carrying costs on the unamortized balance. Such a policy is based upon a sharing of costs between ratepayers and stockholders * * *." *In re Block Island Power Co.*, report and order No. 13769, docket No. 1998, at 20 (1991). Clearly the reason for this disallowance, contrary to the company's assertions, is not simply because shareholders benefit. The PUC's policy is quite reasonable.

As a matter of policy, its sharing of rate-case costs between shareholders and ratepayers is sound. In *Block Island Power Co.* the PUC stated that sharing costs of deferred rate-case expense with stockholders "may provide an incentive to the company to minimalize rate case costs." *Id.* In this case Providence Gas's award from the PUC of $694,000 represents an increase in total company revenues of just one third of 1 percent. However, the rate-case cost amounted to $351,000, all of which is being recovered from ratepayers over a two-year period. Quite

simply, this rate case cost ratepayers almost one-half of the total allowed increase. Understandably, the company's need to file for rate relief was questionable at best. We conclude, therefore, that as a matter of PUC policy, the sharing of rate-case costs between shareholders and ratepayers is a sound policy.

Another policy of the PUC, adopted to protect a utility, is the allowance of the inclusion of deferred rate-case expense in rate base in "unusual circumstances." The commission determined that Providence Gas provided no facts to support the conclusion that unusual circumstances existed to warrant the inclusion of deferred rate-case expense in rate base. We are inclined to agree. Providence Gas failed to rise to its affirmative burden to demonstrate the existence of unusual circumstances that would justify placement of these expenses into the rate base. After a thorough review of the record, we have determined that Providence Gas failed to offer any written testimony or any other evidence supporting its proposed inclusion of this expense in rate base. Accordingly the PUC's clearly articulated and longstanding policy on this issue is not in error.

We see no reason to overturn the PUC's decision. Under the standard of review enunciated in *Rhode Island Consumers' Council v. Smith*, this decision should be upheld. The commission's judgment in this matter has yielded rates that are just and reasonable and fairly and substantially supported by legal evidence.

For these reasons the petitions for certiorari are denied, the writs previously issued are quashed, the orders of the PUC are affirmed, and the papers of the case are remanded to the commission with our decision endorsed thereon.