SOUTH COUNTY GAS COMPANY

v.

Edward F. BURKE.

and

Dennis J. ROBERTS II

v.

Edward F. BURKE.

Nos. 83–325–M.P., 83–343–M.P.

Supreme Court of Rhode Island.

Jan. 15, 1985.

John G. Coffey, Jr., Coffey McGovern Noel & Neal Ltd., Dennis J. Roberts II, Atty. Gen., Daniel J. Schatz, Sp. Asst. Atty. Gen., Providence, for petitioner.

Dennis J. Roberts II, Atty. Gen., Daniel J. Schatz, John P. McGann, Sp. Asst. Atty. Gen., Providence, for respondent.

## OPINION

MURRAY, Justice.

In this case we are presented with two separate appeals which have been consolidated for purposes of this review. Both appeals challenge a decision by the Public Utilities Commission granting South County Gas Company a rate increase of $266,-932. *Re South County Gas Company,* 53 P.U.R.4th 525 (1983). South County Gas Company (hereinafter South County or the company) alleges error on the part of the Public Utilities Commission (hereinafter the commission) in not granting its requested rate increase of $667,824. The Attorney General of the State of Rhode Island challenges that part of the commission's decision allowing a portion of the purchase price of an air compressor as a valid cost of service that must be borne by South County ratepayers. The Division of Public Utilities and Carriers (hereinafter the division) has appeared as respondent to South County's petition and urges affirmance of the commission order. After a careful review of the record we find no error on the part of the commission and affirm its decision in all respects.

In reviewing a decision and order of the commission, this court will consider the fairness and reasonableness of the end result achieved by the commission, not the methodology by which that decision was reached. *Narragansett Electric Co. v. Harsch,* 117 R.I. 395, 368 A.2d 1194 (1977). The commission must, of course, make specific findings which are legally supportable. *Id.; see also Valley Gas Co. v. Burke,* R.I., 446 A.2d 1024 (1982). But our role on appeal from a ratemaking decision is limited to a determination of whether the commission acted illegally, arbitrarily, or unreasonably. G.L.1956 (1984 Reenactment) § 39-5-3. We will not weigh conflicting evidence nor will we substitute our judgment for that of the commission. *Id.; see also New England Telephone & Telegraph Co. v. Public Utilities Commission,* R.I., 446 A.2d 1376 (1982).

It is painfully apparent that the company has either misperceived or ignored the scope of this court's review as set forth above. In its brief to this court the company urges us to reevaluate the evidence presented below and to come to a determination contrary to that of the commission. It has repeatedly invited us to pass upon the credibility of the division's chief witness below, Mr. Gardner, and to draw inferences from the evidence presented below which the commission rejected.

This we refuse to do.[1] In reviewing the record, we look only for commission action that is illegal, arbitrary, or unreasonable. *Narragansett Electric Co. v. Burke*, 122 R.I. 13, 404 A.2d 821 (1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980). In relation to the commission's findings of fact, this court will interfere only if those findings are unsupported by substantial evidence. *Valley Gas Co. v. Burke*, R.I., 446 A.2d 1024 (1982).

■ The commission's decision awarding South County a $266,932 rate increase was based on data generated during a test year that ended on May 31, 1982. The test year is used to establish a public utility's rate base, revenue, expenses, and rate of return. *See Rhode Island Consumers Council v. Smith*, 111 R.I. 271, 278, 302 A.2d 757, 763 (1973). With respect to expenses, the commission made certain downward adjustments of the company's claimed expenses which the company argues are in error. We find the commission's downward adjustments in expenses claimed by the company to be fully supportable by the evidence presented. In each instance, the commission fully set forth its reasoning and the evidence justifying the adjustment. Because of this, we deem it unnecessary to detail each item in dispute.

■ With respect to the company's rate base, we similarly find the commission's adjustments to be sound. The owners of South County also own and operate various other regulated and nonregulated businesses which, in many instances, share a common physical plant.[2] The commission allo-

cated the shared facilities between utility (which were allowed in the rate base) and nonutility (which were not allowed in the rate base). It further eliminated completely from the rate base certain facilities that were found not to be used and useful in the company's operations. We find no error here and affirm the rate base as found by the commission.

We have reviewed the company's further contentions and find no merit in any of them. The commission's decision is fair and equitable and all findings are fully supported by the evidence. The company's appeal is denied and dismissed, and the order of the commission is affirmed.

■ With respect to the Attorney General's challenge to the commission's allowance of a portion of the purchase price of a used air compressor, we similarly find no error on the part of the commission and affirm its decision. The air compressor in question had been used by the company for approximately eight and one-half years, but was not purchased until the test year. Before then, the compressor had been leased to the company at a cost of $525 per month. The compressor was both leased and bought from Gas Sales Corporation, an unregulated retailer of gas appliances wholly owned by Richard Sullivan Sr., Richard Sullivan Jr., and Lawrence Sullivan, the sole owners and/or controllers of South County's stock. With respect to the $24,-000 purchase price of the compressor, the commission wrote:

"A review of the evidence indicates that the purchase price was based upon an inspection and report provided by J.J.

1. Evidentiary arguments are made in the brief which are more properly addressed to the commission but are, for the most part, irrelevant to this court. *See Michaelson v. New England Telephone and Telegraph Co.*, 121 R.I. 722, 404 A.2d 799 (1979).

2. South County shares facilities with the Pequot Gas Company (regulated by the Connecticut Department of Public Utility Control), the Propane Division (an unregulated propane retailer) and Gas Sales Corporation (an unregulated retailer of gas household appliances). All are under the

control of Lawrence Sullivan, Richard A. Sullivan, Jr., and Richard Sullivan, Sr. In addition, the Sullivan family is involved in certain real estate ventures, including properties located at 47–49 High Street (which houses the company's officers, the Gas Sales showroom, and unrelated retail establishments which rent from the company), 125–125½ Canal Street (five residential apartments are located here), and 70 Canal Street (which houses the South County and Pequot gas-distribution and physical storage plant).

Gregory & Son, Inc. [SC Ex. # 34, RAS 4; SC Ex. # 36, p. 6.] That report indicates that if South County were to purchase a new compressor at the cost of $63,900, a trade-in of $24,000 would be allowed for the Ingersol Rand compressor. An outright purchase of the Ingersol Rand compressor was offered at $18,-000. [SC Ex. # 34, RAS 4.] Based upon this information, we conclude that $18,-000 was a fair price for the compressor purchased by the company in the test year. We take this position because of the fact that trade-in allowances often include a portion of the seller's markup on the new product being sold. Thus, we are of the opinion that $18,000 better reflects the fair market value of [the] compressor in 1981." *Re South County Gas Co.*, 53 P.U.R. 4th at 541.

The commission thus allowed $18,000 as a valid cost of service.

The Attorney General asserts that the commission erred on two grounds. First, it is argued that the commission acted arbitrarily and capriciously in allowing an $18,000 purchase cost because the company (and thus the ratepayers) had already expended over $53,000 to lease the compressor for eight and one-half years. It is not asserted that $18,000 standing alone is an excessive price, but that taken together with the lease payments, the overall cost of the compressor is unreasonable. Our response to this is simply that the leasing arrangement is not before us, nor was it before the commission. If the lease payments were excessive (and there is nothing in the record to indicate that they were or were not), then such payments should have been dealt with previously. The commission properly restricted its inquiry to whether the company's purchase price of $24,000 was reasonable.

The second ground upon which the Attorney General premises his argument is statutory. As noted, the compressor was purchased from Gas Sales Corporation, an "affiliate" of South County under the terms of § 39–3–27. As such, agreements between Gas Sales and South County are subject to the requirements of § 39–3–28, which provides:

"Agreements with affiliates required to be filed. The original or a verified copy of any contract or arrangement and of any modification thereof or a verified summary of any unwritten contract or arrangement, the consideration of which exceeds five hundred dollars ($500), hereafter entered into between a public utility and an affiliate providing for the furnishing of managerial, supervisory, construction, engineering, accounting, purchasing, financial or any other services, either to or by a public utility or an affiliate, shall be filed by the public utility with the division within ten (10) days after the date on which the contract is executed or the arrangement entered into. The division may also require a public utility to file in such form as the division may require full information with respect to any purchase from or sale to an affiliate, whether or not made in pursuance of a continuing contract or arrangement."

The provision *requiring* the filing of certain contracts does not apply to the transaction in question since it is not one for services. Contracts for sale are dealt with in the latter part of § 39–3–28, which states that "[t]he division *may also require* a public utility to file * * * full information with respect to any purchase from or sale to an affiliate * * *." (Emphasis added.) This language, in contrast to the mandatory language concerning service contracts, is discretionary. The division "may" require the filing of such contracts. It did not do so here and thus the company cannot be faulted for failing to comply with a nonexistent requirement.

For the reasons stated, the company's appeal is denied and dismissed, the Attorney General's appeal is denied and dismissed, and the commission's order is affirmed.