**In re WOONSOCKET WATER DEPARTMENT.**

**No. 87–178–M.P.**

Supreme Court of Rhode Island.

March 18, 1988.

Steven Raffa, Woonsocket Chamber of Commerce, Providence, for plaintiff.

James E. O'Neil, Atty. Gen., Sheldon Whitehouse, Asst. Atty. Gen., Peter V. Lacouuture, Providence, for Woonsocket Water Dept.

## OPINION

FAY, Chief Justice.

This case is before us on the statutory petition for certiorari of the Greater Woonsocket Chamber of Commerce (chamber) pursuant to G.L. 1956 (1984 Reenactment) § 39-5-1.[1] The chamber seeks review of the Public Utilities Commission's (commission) Report and Order, docket No. 1857, in which the commission approved a uniform surcharge for the City of Woonsocket Water Department (water department or water utility). The chamber contends that the surcharge violates the proscription against retroactive ratemaking and, further, that the water department instituted the surcharge in a discriminatory manner. Considering the governing statutory provision, our limited power of review, and the procedural aspect of this case, we affirm the commission.

On July 28, 1986, the water department filed for a general rate increase to take effect on August 28, 1986. The proposed rate increased the water department's budget from approximately $1,400,000 to $3,001,610, a 114.4 percent augmentation.

With this extraordinary gain, the water utility sought to finance a capital-improvement program. The proposed revenues submitted by the water department included a flat surcharge to be imposed on its customers of ten cents per hundred cubic feet of water. The water utility planned to use the revenues from this surcharge to repay a debt it owed to the city of Woonsocket. During the preceding four years the water utility had accumulated a principal debt of $770,000, with interest accruing at a rate of 6 percent.

■ Acting pursuant to G.L. 1956 (1984 Reenactment) § 39-3-11, as amended by P.L. 1986, ch. 504, § 2, the commission suspended the August 28, 1986, effective date for the general increase for five months. During this suspension the commission held public hearings to examine the necessity and reasonableness of the proposed rate increase. The commission later sought the additional three-month extension that the statute authorizes to complete its investigation. Section 39-3-11 does not, however, give the commission the power to control the effective date of the surcharge. Although the commission needed to examine the surcharge as part of the entire rate determination, § 39-3-11.1 specifically governs the effective date of a rate increase instituted to repay a debt owed to a city, town or municipal corporation. Although the statute permits an investigatory period, it denies the commission the ability to suspend the rate's effective date.

The commission held a total of five hearing days from late October through mid-January. The water utility submitted evidence regarding its plans for the money and worked with both the commission and the chamber to formulate a reasonable budget. This process required the commission to hear technical evidence concerning many water utility activities. A primary project for the water utility consisted of cleaning up Crook Falls Brook. The brook connects

---

1. General Laws 1956 (1984 Reenactment) § 39-5-1 provides for judicial review of the Public Utilities Commission's decisions. The statute reads in pertinent part, "Any person aggrieved by a decision or order of the commission may, within seven (7) days from the date of such decision or order, petition the supreme court for a writ of certiorari to review the legality and reasonableness of said decision or order."

reservoirs 1 and 3, the source of Woonsocket's water supply. The physical location of the brook alongside Route 146 and its exposure to the elements renders the water susceptible to high color and turbidity problems. Specifically, runoff from the highway causes suspension of particulates in the water. Furthermore, testimony indicated that approximately 1,000,000 gallons of water evaporate from the brook daily. As part of its capital-improvement program, the water utility contemplated either purchasing the watershed, piping the brook, or installing baffles to divert the highway overflow to rectify these problems.

The water utility planned additional projects to make the system comply with strict government testing requirements that ensure water purity. The water utility also had to allocate funds for repainting the standpipes that control water pressure, for replacing lead pipes throughout the system with copper ones, and for paying for the additional labor to accomplish these tasks. Another project involved the construction of a chemical plant designed to remove the final pollutants in the water-cleaning process.[2]

Throughout these proceedings the commission heard testimony from Woonsocket water-system customers, including the statements of individual textile businesses and the chamber itself. The chamber objected to the water utility's proposed two-tier rate based on the volume of water consumed rather than the former five-tier payment structure. The chamber essentially argued that the more particularized rate distributed costs according to consumption more closely, and thus more fairly, than the two-tier rate. On January 13, 1987, and January 28, 1987, the water utility and the Division of Public Utilities and Carriers (division) represented by the Office of the Attorney General stipulated to many specific items of the budget. They

agreed to the institution of a three-rate system. Despite the chamber's participation at the hearings and the representation of its members' interests by the division, the chamber moved to intervene on January 28, 1987, objecting to the fairness of the three-rate system. The commission granted limited intervention through the submission of a brief. The chamber accordingly filed a brief in which it objected to the surcharge and to the water utility's request for exemption from §§ 39-3-11 and 39-3-12.[3]

The Commission essentially based the Report and Order on the aforementioned stipulations. The order reduced the proposed additional revenue from $1,901,110 to $1,374,449, allowing the water utility total revenues of $2,474,949. Subsequent to this order, the chamber successfully petitioned for certiorari on the surcharge issue.

 Whereas § 39-5-4 grants to the Supreme Court the power to "reverse or affirm the judgments and orders of the commission and may remand a cause to it with such mandates as law or equity shall require," § 39-5-3 prescribes more certain guidelines:

"The findings of the commission on questions of fact shall be held to be prima facie true and as found by the commission and the supreme court shall not exercise its independent judgment nor weigh conflicting evidence. An order or judgment of the commission made in the exercise of administrative discretion shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily or unreasonably."

This court examines a ruling to determine whether it is lawful, reasonable, and substantially supported by the evidence. *New England Telephone & Telegraph Co. v. Public Utilities Commission*, 446 A.2d 1376, 1380 (R.I. 1982); *see also South*

---

**2.** A granulated activated carbon filter (GAC) eliminates that organic family of trihalomethanes that results from the chlorination process.

**3.** General Laws 1956 (1984 Reenactment) § 39-3-11 defines the notice and hearing peri-

ods in the rate-reviewing process. Section 39-3-12 describes the public utilities' burden of proof. Relying on procedural considerations, the commission dismissed this waiver-of-jurisdiction question.

*County Gas Co. v. Burke,* 486 A.2d 606, 608 (R.I. 1985). It will neither engage in factfinding nor weigh the conflicting evidence presented to the commission. *New England Telephone & Telegraph Co.,* 446 A.2d at 1380 (citing *Michaelson v. New England Telephone & Telegraph Co.,* 121 R.I. 722, 728, 404 A.2d 799, 803 (1979)). Finally, the reviewing court will not oppose the rate of return the commission approves "unless we are satisfied by clear and convincing evidence that the rate is clearly, palpably, and grossly unreasonable." *Bristol County Water Co. v. Harsch,* 120 R.I. 223, 239, 386 A.2d 1103, 1112 (1978) (citing *New England Telephone & Telegraph Co. v. Public Utilities Commission,* 118 R.I. 570, 376 A.2d 1041 (1977)).

Practicality provides the rationale underlying this circumscribed power of review. Section 39–1–1 enunciates the policy leading to the establishment of the commission:

"It is hereby declared to be the policy of the state to provide fair regulation of public utilities and carriers in the interest of the public, to promote availability of adequate, efficient and economical * * * water supplies * * * to provide just and reasonable rates and charges for such services and supplies, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices * * *."

The commission has "the exclusive power and authority to supervise, regulate and make orders governing the conduct" of such companies. *Id.* In order to promote the declared policy, a complete administrative system exists to gather and evaluate technical evidence from various regulated utilities. This court is ill equipped to second-guess the multifarious nature of commission decisions.

■ It is within the province of the commission to determine the type of information a utility must supply to set specific rates. *New England Telephone and Telegraph Co.,* 446 A.2d at 1385. No particular formula binds the commission in formulating its rate decision; the sole requirement is that the ultimate rate be fair and reasonable. *Bristol County Water*

*Co.,* 120 R.I. at 232, 386 A.2d at 1108. The rate that the commission approves, furthermore, carries a presumption of reasonableness that remains until the contrary is proven. *Id.* The commission, therefore, remained well within its discretion in basing its decision on the stipulations.

■ The petitioners object to that part of the decision that approves the surcharge. They contend that it violates the proscription against retroactive ratemaking and, furthermore, that it discriminates against large-volume users. The rule against retroactive ratemaking protects the public by ensuring that present customers do not pay for past revenue losses in their current payments. It also prevents the company from employing future rates as a means of ensuring its stockholders' investments. *Providence Gas Co. v. Burke,* 475 A.2d 193, 196 (R.I. 1984) (quoting *Narragansett Electric Co. v. Burke,* 415 A.2d 177, 178–79 (R.I. 1980)). The commission normally strives to set a rate that covers operating expenses and simultaneously balances the need to protect the public interest against the need to attract new capital investment. *Bristol County Water Co.,* 120 R.I. at 232, 386 A.2d at 1108; *Rhode Island Consumers' Council v. Smith,* 111 R.I. 271, 292, 302 A.2d 757, 770 (1973).

■ This court has recognized an emergency exception to the prohibition on retroactive ratemaking. *Providence Gas Co. v. Burke,* 475 A.2d 193 (R.I. 1984); *Narragansett Electric Co. v. Burke,* 415 A.2d 177 (R.I. 1980). In those cases we determined that such an exception would not contravene the purposes of the rule. Rather than compensating for improperly calculated operating expenses, for example, the one-time surcharge in *Narragansett* paid for extensive repairs that resulted from an unexpected, severe ice storm. This justification applies in the instant case. Although it is true that the surcharge places the burden of the past deficit on present customers, the concern relating to encouraging private investment does not apply to a publicly owned utility. Those revenues that the water utility cannot recover from the users, the city provides through taxes,

not voluntary investors. This diminishes the fairness argument.

Notwithstanding the irrelevance of the reasoning that supports the retroactivity prohibition, the governing statute is a stated exception to the rule. Section 39–3–11.-1(a) specifically provides for retroactive application:

"[T]he commission shall not have the power to suspend the taking effect of any change or changes in the rates, tolls, and charges filed and published in compliance with the requirements of §§ 39–3–10 and 39–3–11 by any public waterworks or water service owned or furnished by a city * * * when such change or changes are proposed to be made solely for the purpose of making payments or compensation to any city or town for reimbursement of any loans or advances of money previously issued to any said public waterworks or water service by any city or town * * *."

Although this court has not previously interpreted this provision, its plain meaning clearly reveals that application of the prohibition would vitiate the meaning of the statute. Regardless of the water department's reason for allowing the debt to accumulate for four years without taking curative steps, this provision permits the water department to institute a retroactive rate to repay its loan from the city.

For these reasons we affirm the decision of the commission. The writ of certiorari previously issued is hereby quashed. The records certified to this court are ordered returned to the commission.