**PROVIDENCE WATER SUPPLY BOARD**

v.

**James MALACHOWSKI, in his capacity as Chairman of the Public Utilities Commission.**

**No. 92–242–M.P.**

Supreme Court of Rhode Island.

May 3, 1993.

William J. McGair, Providence, for plaintiff.

John Spirito, Public Utilities Com'n, Francis X. Flaherty, Wynn & Wynn, Providence, Julio Mazzoli, Asst. Atty. Gen., Paul Roberti, Special Asst. Atty. Gen., for defendant.

## OPINION

FAY, Chief Justice.

This case is before us pursuant to a statutory petition for certiorari filed by the Providence Water Supply Board (PWSB) in accordance with G.L.1956 (1990 Reenactment) § 39–5–1. The petition seeks to review a decision and order of the Public Utilities Commission (commission) issued in docket No.2022. After careful review of the record we affirm the order of the commission.

On August 1, 1991, the PWSB filed a surcharge tariff pursuant to G.L.1956 (1990 Reenactment) § 39–3–11.1. The proposed surcharge was designed to collect $5,020,927.56 to reimburse the city of Providence (city) for advances it made to the PWSB from November 14, 1988, to March 31, 1991. The PWSB entered into a promissory note under which it agreed to repay this amount to the city. The proposed surcharge was assessed on all retail and wholesale PWSB customers at the rate of eight cents per one hundred cubic feet of water billed commencing September 1, 1991. These figures represented a rate increase of approximately 15 percent for a residential customer utilizing 150,000 gallons of water per year. The surcharge proposal provided that the new rates should be applied retroactively.[1]

In docket No.2022 the commission did not approve the PWSB's surcharge request. It approved a lower surcharge. In addition the commission limited the amount the PWSB had to repay to the city and ordered that the balance of the surcharge be used to fund specific accounts. The PWSB seeks reversal of these rulings.

1. In a prior docket the commission found that G.L.1956 (1990 Reenactment) § 39–3–11.1 carved out an exception to the prohibition against retroactive rate making for public waterworks. We agreed that a publicly owned water authority is exempted from the ban on retroactive rate making normally applied to privately owned public utilities. *See O'Neil v. Malachowski,* 604 A.2d 1268 (R.I.1992).

The issues in this case involve the scope of the commission's authority under § 39–3–11.1 to regulate the ability of a municipal water utility to borrow from its municipality. Section 39–3–11.1 governs proposed rate changes filed by a municipally owned water utility that are based solely upon reimbursement to the city or town for loans previously issued to the utility under existing contracts.

A review of the regulatory process to this point will help clarify the issues before us. The PWSB filed a request for rate relief with the commission on February 5, 1988, docket No.1900. In that filing the PWSB sought to increase its revenue requirements, the result of which would be a corresponding increase in its rates. The commission had nine months to render a final decision on the rate request. During that time it conducted lengthy public hearings. The commission subsequently rejected the PWSB's request. It instead authorized a reduced increase in total revenue requirements and segregated three accounts from the PWSB's general funding. The revenue-requirement amount represents the PWSB's approved cost of doing business.

When the commission's rate decision was issued in docket No.1900, it became incumbent upon the PWSB to construct rate tariffs that would realize the revenue required to operate the PWSB. After the tariffs were prepared, they were filed with the commission and approved.

# I

## PUBLIC UTILITIES COMMISSION HEARING ON DOCKET NO.2022

On August 1, 1991, the PWSB filed a $5 million retroactive surcharge with the commission. In docket No.2022 the commission conducted public hearings on the reasonableness of the proposed surcharge. On February 24, 1992, the commission initiated docket No.2044 to review the overall financial condition of the PWSB since March 31, 1991. Both dockets were consolidated for the hearings.

The PWSB offered three witnesses in support of its surcharge filing. Richard Rafanovic, PWSB chief engineer and general manager, testified that the surcharge amount was required to correct an imbalance in the PWSB budget that was caused by a revenue shortfall. He further testified that the loans from the city would be paid back with interest at the rate of 7.5 percent.

Mark Abrahams (Abrahams), a consultant, testified that his function was to compile evidence to support the amount of the PWSB's surcharge-filing request. He apprised the commission that the surcharge request included $425,927 for working capital needed by the PWSB during the borrowing period. Abrahams summarized that the surcharge is necessary because the PWSB did not receive sufficient operating revenue to meet its expenditure obligations. His findings showed that expenditures during the surcharge period were consistent with the cost of service authorized in the last rate case, docket No.1900.

Walter Edge, Jr. (Edge), an accountant, testified that the PWSB had not received the expected revenues approved in docket No.1900 and that its financial problems were not caused by overspending. He believed the primary reason for the revenue shortfall was the PWSB's improper calculation of customer-service-charge revenues. He explained that the PWSB passed up $1 million in revenues because its consultants had failed to calculate accurately rate-year revenues. That error resulted in four and one-half months of lost revenues that were approved in docket No.1900. Edge also stated that the same PWSB consultants had inadvertently double counted revenues anticipated from customer charges and that meter sales had fallen short of the consultants' estimates. In addition he testified that another $500,000 was unaccounted for because the PWSB "quit looking for additional errors."

The Division of Public Utilities and Carriers (division) offered one witness in opposition to the PWSB's surcharge request. Thomas Catlin (Catlin), an economic consultant, reviewed the PWSB's proposed sur-

charge. His findings covered the cause of the shortfall, the proposed surcharge mechanism, and the proposed interest rate. He agreed with Edge that the revenue shortfall was caused by the four and one-half month lag in implementing the rate increase and errors in calculating service-charge revenues.

Catlin objected to the 7.5 percent interest rate on the city's loan. He determined that a 6 percent interest rate accurately reflected the city's cost of borrowing money at the time the PWSB entered into the promissory note with the city. Similarly the division also rejected the PWSB's proposal to pass along to ratepayers a $425,927 working-capital expense. The division maintained that this expense was expressly denied by the commission in docket No. 1900 and should be similarly rejected in docket No.2022.

On April 24, 1992, the commission issued its report and order on the retroactive surcharge. The commission addressed the revenue shortfall and several areas of fiscal irresponsibility that had undermined its regulatory oversight. The commission found that the PWSB violated certain requirements mandated under docket No. 1900, had fiscally mismanaged itself, and was solely responsible for its own revenue deficiencies.

The commission agreed with Edge that PWSB's revenue shortfall was "mind boggling." It found that the shortfall was the consequence of consultants' errors and the failure of PWSB board members and management to discern these errors when docket No.1900 was presented to the commission. The PWSB had waited almost three years to call this matter to the attention of the commission.

The focal point of the commission's decision was the undisputed violations of docket No.1900. The commission concluded that since November 14, 1988, the PWSB had "managed its finances with reckless disregard for economic reality." In docket No.1900 the commission authorized over $8 million for operations and maintenance expenses. In addition the commission had mandated nearly $4 million for three re-stricted accounts that were segregated from the PWSB's general funds. During the borrowing period the PWSB violated the agreement reached in docket No.1900. The PWSB exceeded its authorized operations and maintenance account by $5,454,175, and it underfunded the three restricted accounts by $3,537,745. The commission opined that the PWSB applied funds earmarked for restricted accounts toward an unauthorized increase in its operations and management budget. It made matters worse during this period by increasing its total staff by 21 percent and by providing significant raises to its employees.

The commission found that the PWSB had intentionally disregarded its regulatory oversight in two respects. In docket No. 1900 the commission expressly rejected the PWSB's request to fund a $245,285 working-capital account. The PWSB subsequently borrowed a working-capital amount of $425,927 from the city and included this amount in its surcharge request. Finally, the PWSB executed a promissory note with the city to legitimize its overspending. The note was executed without the permission of the division and contained several defects. See § 39–3–15.

The commission ordered various measures to control the PWSB's financial misfeasance. It denied most of the $5 million surcharge sought by the PWSB to reimburse the city. Instead it authorized a surcharge of $4,595,000 at the rate of eight cents per one hundred cubic feet of water billed commencing September 1, 1991. It limited the amount to be paid to the city as remuneration for the PWSB borrowing to $1,346,449 without interest and eliminated the working-capital amount. The commission remained committed to the capital improvements authorized in docket No.1900 and found that the surcharge would be better spent replenishing the PWSB's restricted capital-improvements account. It ordered the balance of the surcharge to be used to fund the other two restricted accounts. It provided that the PWSB may repay the balance of the note to the city from savings through more efficient operations. To facilitate compliance, the com-

mission subjected the PWSB to more rigorous reporting procedures.

One of the commission members dissented from the majority opinion. Commissioner Lila Sapinsley reasoned that to halt the PWSB's cavalier spending and to ensure fairness to the ratepayers, the entire surcharge should be discontinued.

## II

## PUBLIC UTILITIES COMMISSION OVERSIGHT

■ The Supreme Court has a limited power of review in regulatory proceedings. Our authority is restricted to a "review [of] decisions and orders of the commission in order to assess their legality and reasonableness." *Providence Gas Co. v. Malachowski,* 600 A.2d 711, 714 (R.I.1991); *see* § 39–5–1.

■ Even though we may reverse, affirm, or remand orders of the commission, we afford "great deference to decisions of the Public Utilities Commission in its ratemaking regulatory capacity." 600 A.2d at 714; § 39–5–4. We do so because the Legislature has mandated that we cannot reverse an order of the commission unless it exceeded its authority or acted illegally, arbitrarily, or unreasonably. Section 39–5–3. In our review, a party challenging a rate that the commission approves must overcome the presumption that the commission's conclusions are reasonable unless shown otherwise by clear and convincing evidence. *In re Woonsocket Water Department,* 538 A.2d 1011, 1014 (R.I.1988); *see Providence Gas Co.,* 600 A.2d at 714.

■ Our review of factual conclusions is also limited. We must presume that the factual findings of the commission are prima facie evidence of truth over which we cannot exercise our independent judgment or weigh conflicting evidence. Section 39–5–3. *See Providence Gas Co.,* 600 A.2d at 714; *South County Gas Co. v. Burke,* 551 A.2d 22, 24 (R.I.1988); *Woonsocket Water Department,* 538 A.2d at 1014. The role of factfinder is expressly reserved for the commission, and this court may not substitute its judgment for the commission's. *Providence Gas Co.,* 600 A.2d at 714.

The theory underlying the PWSB's petition for certiorari is that § 39–3–11.1 circumscribes the commission's oversight of the PWSB's retroactive rate filing. Our analysis therefore explores the breadth of the commission's authority and the limitations placed upon it by the retroactive ratemaking enactment.

■ Both statutory and case law afford the commission broad power to oversee the regulatory rate-making process. Our Legislature was the first in the nation to vest its utility-oversight responsibilities in an administrative agency. C. Phillips, *The Regulation of Public Utilities* 122 (1988). In title 39 of the General Laws the Legislature has set forth the extent of the commission's jurisdiction and authority. We have interpreted the provisions in § 39–1–1 to allow the commission to "address the myriad of complex problems associated with regulatory proceedings." *South County Gas Co.,* 551 A.2d at 25. In order to promote its policies, the Legislature has empowered the commission with a complete administrative system to gather and evaluate technical evidence. *Woonsocket Water Department,* 538 A.2d at 1014. Moreover, the Legislature has specifically made the PWSB subject to the commission's review. *Roberts v. Providence Water Supply Board,* 455 A.2d 316, 317 n. 2 (R.I.1983). That review exceeds mere regulation. Section 39–1–1 vests the commission with the power to regulate and to *supervise* the conduct of the PWSB for the purpose of controlling its efficiency and protecting the public against improper and unreasonable rates. Section 39–1–1(c).

■ The PWSB argues that § 39–3–11.1 restricts the otherwise broad oversight powers of the commission. The statute provides in part:

"Changes in rates of publicly owned water authorities.—(a) Notwithstanding any other provisions of this chapter, the commission shall not have the power to suspend the taking effect of any change or changes in the rates * * * [of] any public waterworks or water service

owned or furnished by a city, town, or any other municipal corporation * * * when the change or changes are proposed to be made solely for the purpose of making payments or compensation to any city or town for reimbursement of any loans or advances of money previously issued to any public waterworks or water service by any city or town under existing contracts or arrangements; provided, however, that the change or changes shall take effect *subject to refund or credit pending further investigation, hearing, and order by the commission* within eight (8) months after the effective date. The public waterworks or water service shall file with the commission the new rate schedule along with the documentary evidence of the indebtedness supporting the same." (Emphasis added.)

The PWSB insists that this statute deprives the commission of its authority to investigate the propriety of the surcharge.

In support of its interpretation the PWSB contends that our holding in *Woonsocket Water Department* limited the scope of a retroactive rate filing under § 39–3–11.1. In *Woonsocket Water Department* we stated that "[r]egardless of the water department's reason for allowing the debt to accumulate for four years without taking curative steps, this provision permits the water department to institute a retroactive rate to repay its loan from the city." 538 A.2d at 1015. *Woonsocket Water Department* concerned a surcharge approved by the commission to finance long-term capital improvements. The Woonsocket water department sought relief from its debt burden and complied with the oversight of the commission. Apparently the PWSB fails to see the irony in this precedent. In stark contrast to the Woonsocket water department's long-range provisions, the PWSB requested a surcharge in order to fund current operations at the expense of capital improvements and in violation of a prior commission decision.

Section 39–3–11.1(a) consists of two parallel provisions. In *Woonsocket Water Department* we interpreted the first part of the rate-making statute. We addressed the ability of a municipal water utility to institute a retroactive rate. We held that the water utility was permitted to impose a retroactive rate to repay its loan from the city under the statute, thus creating an exception to the rule against retroactive rate making. 538 A.2d at 1015. The PWSB, however, fails to recognize that in this matter we are called upon to construe both the provision for retroactive rate making and the complementary condition that mandates further investigation by the commission.

The PWSB claims that the rate-making statute limits the commission's inquiry to the existence and legitimacy of loans and advances. We disagree with this interpretation of the statute. Section 39–3–11.1 leaves the commission with substantive review of the PWSB's rate filing. It specifically provides that the exception to retroactive rate making "shall take effect subject to refund or credit pending further investigation, hearing, and order by the commission." Section 39–3–11.1(a). In *O'Neil v. Malachowski*, 604 A.2d 1268 (R.I.1992), we addressed the effect of the rate-making statute on the same surcharge in issue in this case. We now reiterate that § 39–3–11.1 does not abrogate the review provisions of the regulatory scheme in chapter 3 of title 39. It merely defers them. 604 A.2d at 1269.

Under § 39–3–11.1 retroactivity is a tradeoff. The PWSB may retroactively remedy revenue deficiencies under the statute. Likewise, the commission is within its authority retroactively to investigate the reasonableness and justification of such deficiencies. The alternative to retroactive review would be to permit the flouting of regulatory authority demonstrated by the PWSB in this case.

■ The PWSB contends that its surcharge filing was predicated upon an undercollection of revenue. It claims that the commission's disallowance of $3,248,551 from the city's reimbursement was erroneous and not supported by evidence in the record. In its decision and order, the commission found that in addition to a revenue

shortfall, several factors caused the PWSB's financial malaise. It particularly noted that the PWSB contributed to its own predicament by failing to fund three restricted accounts and surreptitiously including a working-capital amount in its budget. Both parties acknowledge that these financial decisions were made in violation of docket No.1900. Furthermore the commission found that the PWSB executed the $5 million promissory note without seeking division approval pursuant to § 39–3–15. Our review of the record confirms that the commission's rulings were based primarily on violations of its decision in docket No.1900. In light of its budgetary legerdemain we find the PWSB's argument that its filing is aimed solely at remedying a revenue shortfall to be pure sophistry.

■ In addition to its main contentions, the PWSB claims that the commission erred with respect to docket No.2044. It asserts that the commission exceeded its authority by conducting a general inquiry into the PWSB's operational efficiency in docket No.2044. We believe that statutory authority contradicts the PWSB's contention. Section 39–3–11.1 addresses the unique financial relationship of a municipal water utility to its municipality. Nevertheless, the Legislature has not revoked all the authority that it had previously delegated to the commission. The commission remains vested with the power to supervise and regulate the efficiency of the PWSB. *See* § 39–1–1(c). In addition the commission's authority extends to determining the *type* of information a utility must supply to set specific rates. *Woonsocket Water Department*, 538 A.2d at 1014. The PWSB also argues that the commission did not afford it proper notice before introducing docket No.2044. We find that the PWSB's argument lacks merit because it neglects to cite any evidence in support of its claim.

The PWSB also asserts that the commission harbored a bias against the existence of the retroactive rate-making statute that resulted in an erroneous report and order. This claim is simply a red herring. Despite the commission's stated displeasure with the provisions of § 39–3–11.1, the PWSB

failed to show any prejudicial material. In fact, both *Woonsocket Water Department* and *Audubon Society of Rhode Island v. Malachowski*, 569 A.2d 1 (R.I.1990), included retroactive surcharges approved by the commission.

In docket No.2022 the commission was upholding a simple principle of sound financial management. As the agency charged with the regulatory oversight of the PWSB, it would not permit the PWSB to seek funds from ratepayers that were lost because the PWSB had violated the commission's directives.

In both *Woonsocket Water Department* and *O'Neil v. Malachowski,* we concluded that our rulings had a favorable effect upon both taxpayers and utility customers. We noted in *O'Neil* that the purpose underlying § 39–3–11.1 was to balance the interests of ratepayers and the reimbursement of taxpayers. 604 A.2d at 1269. The commission's decision is consistent with this policy. In this matter the commission's decision protects the interests of both taxpayers and ratepayers. Ratepayers will be protected against the PWSB's manipulation of § 39–3–11.1 to recover items expressly disallowed by the commission and to increase current expenses without having to submit to administrative review. Similarly taxpayers will benefit from the commission's exercise of fiscal prudence. Without the commission's guidance, the PWSB will have little incentive either to adopt proper fiscal management or to adhere to statutory requirements. Although the city must bear some responsibility in permitting the PWSB's debt to grow unchecked, it is not in the taxpayers' interest to permit the PWSB to use funds earmarked for long-term capital improvements to finance uncontrolled current expenses.

For the reasons stated, there is a reasonable basis for the commission's decision. We are therefore compelled to affirm the commission's finding. The petition for certiorari is denied. The writ heretofore issued is quashed. The order of the Public Utilities Commission is affirmed, and the papers in the case are remanded to that

commission with our decision endorsed thereon.