**Supreme Court**

No. 2012-242-M.P.
(4025)

Portsmouth Water and Fire District       :

                    v.                    :

Rhode Island Public Utilities Commission.   :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Portsmouth Water and Fire District          :

v.                                          :

Rhode Island Public Utilities Commission.   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.**  This case came before the Supreme Court for argument on November 3, 2016, pursuant to a statutory petition for a writ of certiorari filed in accordance with G.L. 1956 § 39-5-1.  The petitioner, Portsmouth Water and Fire District (Portsmouth), seeks review of a Public Utilities Commission (PUC) order issued in response to this Court's remand order that required the PUC to make more specific findings of fact in a rate case involving the City of Newport's Utility Department, Water Division (Newport Water or utility).  After carefully considering the record in this case, we affirm in part and vacate in part the PUC's order.

# I

## Facts and Travel

### A

### Background and Prior Litigation

Like immiscible liquids, Portsmouth and Newport Water have not mixed well in the arena of rate filings. The origins of this case date back more than thirteen years and stem from Newport Water's November 2003 application with the PUC—designated by that body as docket No. 3578—requesting a revenue increase. The filing precipitated a dispute between Newport Water and its wholesale customers[1] concerning several issues, including $2.5 million for services that the City of Newport had provided to Newport Water that the utility claimed it owed to the city. The case was resolved through a PUC-approved settlement in which the utility was allowed to repay $2.5 million in debt that it owed to the city. Also, as part of that agreement, the utility agreed "that it will not seek to recover in rates any additional monies that it may borrow from the City of Newport up through and including June 30, 2005." Newport Water further agreed that, if it borrowed any money from the city subsequent to that date, such a "loan shall be reflected by appropriate documentation and Newport Water shall have the duty to monitor and track its costs and properly account for how the loan proceeds are applied."

On January 29, 2007, Newport Water filed another rate application with the PUC—designated docket No. 3818—again requesting a revenue increase.[2] During that proceeding, evidence surfaced that Newport Water owed $1,584,171 to the city for payroll, city service

---

[1] Additional parties to this docket were the Division of Public Utilities and Carriers (Division), Portsmouth, and the United States Navy (Navy). Portsmouth and the Navy purchase water on a wholesale basis from Newport Water.

[2] The parties to this docket were the same as in docket No. 3578.

charges, sewer bills, and other items.[3]  On March 24, 2008, the PUC issued an order in docket No. 3818 that said in part:

> "The [PUC] finds that the $1,584,171 should be paid back to the City. The [PUC] will not include this repayment to the City in Newport Water's revenue requirement, but if Newport Water realizes savings from efficiencies, and such funds are not required for expenses included in the revenue requirement, it may use such savings to pay down the accounts payable balance owed to the City."

On December 9, 2008, Newport Water filed yet another application for a rate increase—docket No. 4025—and it is that filing that has spawned the litigation in this case.[4]  During the litigation surrounding docket No. 4025, an issue that became contentious was whether Newport Water had violated the dictates of the above quoted language from the order in docket No. 3818.  Specifically, the parties addressed the following prebriefing question that the PUC issued: "Whether the issue of repayment to the City * * * in the amount of $1,584,171 has been decided by [the order in docket No. 3818].  If so, can and should the [PUC] revisit this issue in the instant docket[?]"

The PUC held an open meeting on June 25, 2009, during which it attempted to resolve the issue at hand.  Portsmouth argued that Newport Water should be allowed to repay the city using only savings from efficiencies that were not required for expenses included in the revenue requirement.  The PUC, however, did not agree; it ruled that Portsmouth's interpretation of the order in docket No. 3818 was incorrect.  The PUC held that it "did not clearly require" savings to

---

[3] Although not germane to resolving this case, it is worth understanding that at the root of Newport Water's debt to the city is the fact that, unlike other municipal water utilities, Newport Water is required to fund certain restricted receipt accounts before paying any amount that might be due to the city.  This results in less money being available to pay operations and maintenance expenses.  When it faces a cash deficit, Newport Water opts to pay outside vendors first and city service expenses last.  This policy has, from time to time, resulted in a series of payroll and city service expenses unpaid.

[4] The additional parties to this docket were again the Division, Portsmouth, and the Navy.

be created through efficiencies as a condition precedent to the utility's repayment to the city. Rather, the order merely "set forth * * * the amount which was to be repaid to the City at the time of the hearing in Docket No. 3818, but not included in Newport Water's Revenue Requirement." Additionally, the PUC determined that Newport Water had, in fact, realized "savings," had not violated the PUC's previous order, and that "none of the disputed repayments should be disallowed."

On March 29, 2010, the PUC issued a report and order in docket No. 4025 that encompassed the June 25, 2009, open meeting (hereinafter report and order). Within that report and order, the PUC detailed Newport Water's "net cost savings," relying heavily on the testimony of Ms. Julia Forgue, director of utilities for the city. Specifically, the PUC noted that Newport Water's net cost savings arose from the following: "employee turn-over and the lack of a new labor contract"; "a City policy change regarding the payment of landline telecommunications costs"; reduced use of heavy equipment "due to a lack of any large main breaks"; "a change in Dam Safety Regulations and a decision to limit raw material purchases for dam repairs and tree removals"; "management decisions * * * regarding the hiring of temporary employees"; reduced spending on conferences and training; a "reduction of inventory and office supply purchases"; and other budgeted costs that were lower than anticipated in the revenue requirement. The PUC found that all funds that had been realized through the above mentioned savings were available to Newport Water "to reduce its payables to all vendors, including the City." Additionally, the PUC also recognized that Newport Water realized savings through "the specific types of efficiencies discussed * * * in Docket No. 3818." In particular, the PUC

identified Newport Water's transition to quarterly billing and its implementation of radio reads[5] as "efficiencies." The PUC held that the aforementioned efficiencies were "a means to commence the required repayment" of Newport Water's $1,584,171 debt owed to the city.

Portsmouth, feeling aggrieved by the PUC's report and order of March 29, timely petitioned this Court for a writ of certiorari under § 39-5-1, which we issued on April 21, 2010. When the case was argued before this Court, Portsmouth asserted that the PUC's order in docket No. 3818 clearly prohibited Newport Water from repaying the city with funds that had been included in the revenue requirement. The gravamen of Portsmouth's argument was that Newport Water violated the PUC's repayment order because, in Portsmouth's view, it did not realize any "savings from efficiencies." Instead, Portsmouth averred that Newport Water took money from items that had been included in its revenue requirement and diverted it to the city.

This Court addressed those issues in Portsmouth Water and Fire District v. Rhode Island Public Utilities Commission, 37 A.3d 114 (R.I. 2012) (mem.) (Portsmouth Water I). We rejected the PUC's argument that "the production of 'efficiencies' was * * * merely a means to commence the required repayment at the time of the Order without increasing rates." Id. at 117. Ultimately, it was our "opinion that the PUC did not make sufficient findings of fact to support its conclusion that Newport Water complied with the order in docket No. 3818." Id. We were troubled by the fact that the PUC "did not specifically identify the sources of [the] 'net cost savings,' or quantify them, such that we can determine whether the utility realized $1,584,171 of 'savings from efficiencies' that were 'not required for expenses included in the revenue

---

[5] The term "radio reads" refers to a meter-reading system in which the utility can read customers' meters remotely, as opposed to physically entering the premises, thereby "minimizing unaccounted for water, estimated billings, and customer inconveniences." See City of Newport: Water Meters, http://www.cityofnewport.com/departments/utilities/water/water-meters (last visited October 18, 2016).

requirement.'" Id. Consequently, we vacated the PUC's order in docket No. 4025 to the extent that it failed to enforce the order in docket No. 3818, and we issued a remand order to the PUC "with directions that it make more specific findings of fact to support its conclusion that Newport Water complied with the order in docket No. 3818." Id. at 118.

**B**

**The PUC's Order on Remand**

On remand, the PUC determined that further hearings were not required,[6] and it considered the matter at an open meeting on August 8, 2012. Then, on August 10, 2012, the PUC issued a written order in response to this Court's remand order (hereinafter order on remand). Using the records already available in docket No. 4025, the PUC identified areas of savings and reductions that it believed "were the types of things the Commission anticipated when referencing efficiencies." Specifically, the PUC found savings and reductions "relate[d] to items that unexpectedly came in below budgeted levels" as follows:

> "(1) employee retirements; (2) absenteeism due to disability leave; (3) a reduction in overtime based on a reduction in water main breaks; (4) opt-outs for family health care; (5) reduced participation in the tuition reimbursement benefit; (6) change in City policy regarding payment for phone service; (7) reduced need for heavy equipment rental due to reduction in water main breaks, reservoir maintenance not needed because of new DEM regulations; (8) delay in sewer startup reducing the payments owed by NWD; (9) less than anticipated regulatory fees from RIDOH, anticipated service contract not required in FY 2008; (10) no self insurance needed in FY 2008; (11) no layoffs requiring no unemployment claims; and (12) other reductions related to drawing down on inventory or reducing dues and subscriptions, temporary

---

[6] According to the PUC's order on remand, counsel for both Portsmouth and Newport Water said that not only was a hearing not required, but that it would be inappropriate. PUC's counsel was not in complete agreement, but deferred to Portsmouth and Newport Water. Accordingly, no further hearings were conducted, and the order on remand was based solely on evidence already within the record.

labor or conferences and training, but not putting off repairs or maintenance as a result."

The PUC went on to highlight that it "cannot accept Newport Water's position that savings should include deferred costs such as things like maintenance items [that] were simply held off until after the rate year." Ultimately, the PUC concluded "that Newport Water realized $557,499 in the type of net cost savings that would fall within the language of the Docket No. 3818 Order."

Additionally, the PUC identified $191,997 in "excess revenues in Order No. 3818" that was available to Newport Water to reduce its "payables to the City in Fiscal Year 2008." The PUC reasoned that, although this money did not strictly qualify as an "efficiency," the use of excess revenues is "normally a management decision," and "not an area into which the Commission is entitled to delve." Accordingly, the PUC determined that Newport Water could use the $191,997 to repay its debt to the city.

It is worth noting that, despite the references to radio reads and the switch to quarterly billing as efficiencies in Portsmouth Water I, the PUC ultimately concluded that any savings from these two items were not available to Newport to pay down its debt to the city. Regarding the radio reads, the PUC found that the switch did result in cost savings, but, "[u]nfortunately, a further review of the docket [did] not result in an adequate quantification of those savings." Consequently, those savings could not be applied to the debt that Newport Water owed to the city. As for the transition to quarterly billing, the PUC was able to identify $128,182 in savings, but found that these savings were, likewise, not available to pay down the $1,584,171 balance because the PUC had previously ordered Newport Water to "restrict those funds through the end of Fiscal Year 2009."

Finally, the PUC articulated "that there is no evidence in the Record in Docket No. 4025 that Newport Water repaid $1,584,171 to the City of Newport in Fiscal Year 2008." The only reference to the amount that Portsmouth alleges Newport Water repaid to the city was in a footnote in Portsmouth's prehearing brief. According to Portsmouth, Newport Water repaid $952,252 to the city. The PUC, however, did not rely on the footnote "because it was not part of the Record." Nevertheless, the PUC did analyze cash flow reports that showed that "Newport Water had never reduced its payables to zero and further, that as of June 30, 2008, * * * Newport Water's outstanding balance to the City was $1,005,417."

Portsmouth, again feeling aggrieved by the PUC, exercised its statutory right under § 39-5-1 and timely filed a petition for a writ of certiorari with this Court on August 17, 2012. We issued the writ on August 20, 2012.

## II

## Discussion

## A

### Issues on Appeal

On appeal, Portsmouth raises four related issues. First, Portsmouth argues that the PUC failed to make the factual findings that this Court required in its Portsmouth Water I order. Specifically, Portsmouth contends that the PUC failed to identify any efficiencies that resulted in savings not necessary for Newport Water's revenue requirement. Portsmouth also claims that the PUC's definition of "efficiency" is incorrect. Second, Portsmouth maintains that the PUC erred when it held that Newport Water could use $191,997 in excess revenues to repay the city. Third, Portsmouth asserts that the PUC erred when it concluded that there was no evidence in the record to show that Newport Water repaid $1,584,171 to the city. And fourth, Portsmouth

maintains that in order for the PUC to be in compliance with Portsmouth Water I, it should have ordered the city to repay to the utility any portions of the $1,584,171 that it found were not the result of savings from efficiencies.

**B**

**Standard of Review**

It is undisputed that this Court affords great deference to the PUC's decisions. Providence Gas Co. v. Malachowski, 600 A.2d 711, 714 (R.I. 1991). The General Assembly has prescribed the standard of review for cases brought before this Court in accordance with § 39-5-3:

> "The findings of the commission on questions of fact shall be held to be prima facie true, and as found by the commission and the [S]upreme [C]ourt, shall not exercise its independent judgment nor weigh conflicting evidence. An order or judgment of the commission made in the exercise of administrative discretion shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably." Id.

When we review a PUC decision, "our mission is to determine 'whether the decision of the commission was fairly and substantially supported by legal evidence specific enough to enable us to ascertain if the facts upon which the commission's decision is premised afford a reasonable basis for the result reached.'" Narragansett Electric Co. v. Rhode Island Public Utilities Commission, 35 A.3d 925, 931 (R.I. 2012) (quoting Newport Electric Corp. v. Public Utilities Commission, 624 A.2d 1098, 1101 (R.I. 1993)); see Providence Water Supply Board v. Public Utilities Commission, 708 A.2d 537, 541 (R.I. 1998); see also § 39-5-1. Moreover, "[o]ur review requires us to determine 'whether the PUC ruled in a lawful and reasonable manner and whether its findings of fact are fairly and substantially supported by legal evidence.'" Portsmouth Water I, 37 A.3d at 117 (quoting In re Kent County Water Authority Change Rate

Schedules, 996 A.2d 123, 128 (R.I. 2010)). "[I]f it becomes impossible for us properly to fulfill our assigned function because of the [PUC's] failure to set forth sufficiently the findings and the evidentiary facts upon which it rests its decisions, * * * we will not speculate thereon nor search the record for supporting evidence or reasons." Narragansett Electric Co., 35 A.3d at 931 (quoting Rhode Island Consumers' Council v. Smith, 111 R.I. 271, 278, 302 A.2d 757, 763 (1973)). Rather, "we will remand the case in order to afford the commission an opportunity to fulfill its obligations in a supplementary or additional decision." Id.

Despite the great deference we afford to the PUC, "we review the PUC's determinations of law under a de novo standard." Portsmouth Water I, 37 A.3d at 117. Moreover, only this Court may determine whether the PUC has complied with one of our remand orders. Accordingly, "[w]e review de novo whether [the PUC] faithfully and accurately followed our mandate on remand." American States Insurance Co. v. Synod of the Russian Orthodox Church Outside of Russia, No. 04-51223, slip op. at 6 (5th Cir. March 2, 2006) (citing Sobley v. Southern Natural Gas Co., 302 F.3d 325, 332 (5th Cir. 2002)); see also Hagopian v. Hagopian, 960 A.2d 250, 253 (R.I. 2008) ("a lower court 'has no power or authority to deviate from the mandate issued by an appellate court,'" and "a lower court on remand must implement both the letter and spirit of the [appellate court's] mandate, and may not disregard the explicit directives of [the remanding] court") (quoting RICO Corp. v. Town of Exeter, 836 A.2d 212, 218 (R.I. 2003))).

## C

## Analysis

## i

## Order on Remand

## a

Portsmouth's primary argument is that the PUC failed to abide by this Court's mandate in Portsmouth Water I. Portsmouth contends that this Court, in Portsmouth Water I, required the PUC on remand "to make three separate findings: (1) identify the source of any savings from efficiencies; (2) quantify the amount of savings from that source; and (3) explain why the savings were not required for expenses in the revenue requirement." However, Portsmouth's interpretation of our order in Portsmouth Water I overstates, to some extent, our actual mandate to the PUC. It is true that in our order we said that the PUC "did not specifically identify the sources of [the] 'net cost savings,' or quantify them, such that we can determine whether the utility realized $1,584,171 of 'savings from efficiencies' that were 'not required for expenses included in the revenue requirement.'" Portsmouth Water I, 37 A.3d at 117. Indeed, we noted this lack of specificity to explain why it was impossible for us to determine if "the PUC ruled in a reasonable manner and whether or not its findings of fact [were] fairly and substantially supported by legal evidence." Id. at 117-18. Our actual mandate, however, simply directed the PUC to "make more specific findings of fact to support its conclusion that Newport Water complied with the order in docket No. 3818." Id. at 118.

It is our opinion that the PUC satisfied the strictures of our order in Portsmouth Water I. In its order on remand, the PUC clearly identified twelve areas in which Newport Water realized savings through efficiencies. The PUC then quantified the total amount saved. Surely it would

have been preferable if the PUC had provided a more detailed itemization of the savings that Newport Water achieved. And it would have been better if the PUC had created a line item that corresponded to each efficiency identified. This Court did not, however, require that degree of specificity from the PUC. We merely asked for the fact-finding on remand to be more specific than it was in the report and order that preceded Portsmouth's first appeal, and the PUC met that burden.[7]

**b**

In addition to arguing that the PUC simply did not make the factual findings that we required, Portsmouth contends that the twelve areas that the PUC identified as efficiencies are actually not efficiencies at all, and any savings that Newport Water realized were mere happenstance. In this regard, Portsmouth argues that the term "efficiencies" has a narrow definition that would require Newport Water "to take affirmative steps to operate at a reduced cost."

The PUC, however, has taken a more expansive view of "efficiencies." In its report and order from docket No. 4025, the PUC gave examples of what it deemed to be efficiencies, including savings from "sound fiscal management * * *, shortening the billing cycle, more aggressive collection of accounts receivable, higher than anticipated revenues in a given year due to unanticipated consumption increases, and implementation of automated meter reading." The PUC went on to say that, instead of looking only at specific items that create savings, the PUC

---

[7] In the report and order from docket No. 4025, the PUC mentioned eight areas where Newport Water realized cost savings, and also credited Newport Water for having created efficiencies through its transition to radio reads and quarterly billing. The March 29 report and order did not, however, attach any dollar amount to these savings, which left us unable to determine if the PUC had ruled reasonably. In contrast, the order on remand after our opinion in Portsmouth Water I highlighted twelve areas of efficiencies and specifically excluded the radio reads and quarterly billing. Furthermore, the PUC's order on remand included a specific dollar amount that Newport Water saved as a result of the efficiencies.

will consider the totality of a regulated agency's operations when assessing efficiencies. The PUC acknowledged that, although Portsmouth "may define efficiency differently," the PUC "finds that its interpretation of [the order in docket No. 3818] is consistent with both the dictionary definition provided by [Portsmouth] and with prior [PUC] decisions." Furthermore, in its order on remand, the PUC held that the "savings and reductions" that Newport Water achieved "were the types of things the [PUC] anticipated when referencing efficiencies."

In essence, Portsmouth argues that we should weigh its definition of "efficiency" against the PUC's definition and determine whose is correct. However, our role in a case such as this one is not to balance competing definitions. Rather, our review is limited to determining whether the PUC ruled in a "lawful and reasonable manner." Portsmouth Water I, 37 A.3d at 117 (quoting Kent County Water Authority, 996 A.2d at 128). We have repeatedly said that there is a "presumption that the [PUC's] conclusions are reasonable unless shown otherwise by clear and convincing evidence." Providence Water Supply Board v. Malachowski, 624 A.2d 305, 309 (R.I. 1993). Furthermore, we have held that G.L. 1956 § 39-1-1 vests the PUC with the power to "address the myriad of complex problems associated with regulatory proceedings, and render intelligent decisions. We honor that legislative intent and refuse to substitute our judgment for the judgment of the [PUC]." South County Gas Co. v. Burke, 551 A.2d 22, 25 (R.I. 1988). Accordingly, because we find nothing unreasonable or unlawful in the PUC's definition of "efficiencies," we must uphold it as correct within the context of this case.

In sum, it is our opinion that the PUC has lawfully and reasonably defined, identified, and quantified "efficiencies" as it relates to the order in docket No. 3818.

- 13 -

**Excess Revenues**

Portsmouth's next argument on appeal is that the PUC impermissibly ruled that Newport Water may use $191,997 in "excess revenues in [docket] No. 3818" to reduce its "payables to the City in Fiscal Year 2008." Portsmouth contends that the order in docket No. 3818 (quoted supra) allowed repayment only from savings achieved through efficiencies. Portsmouth asserts that the PUC "did not have leeway to identify other sources of funds to supplement any savings from efficiencies * * *." The PUC, however, disagrees with Portsmouth. In its order on remand, the PUC said that "[t]here was no discussion of the use of excess revenues in Order No. 3818[,] which is silent with regard to Newport Water's usage of any excess revenues it may realize * * *."

This Court affords great deference to the PUC "because the Legislature has mandated that we cannot reverse an order of the commission unless it exceeded its authority or acted illegally, arbitrarily, or unreasonably." Providence Water Supply Board v. Malachowski, 624 A.2d at 309 (citing § 39-5-3). It is our opinion, however, that the PUC went beyond the scope of our remand order, thereby exceeding its authority. Our order limited the PUC to "make more specific findings of fact to support its conclusion that Newport Water complied with the order in docket No. 3818." Portsmouth Water I, 37 A.3d at 118. By the PUC's own admission, the order in docket No. 3818 was "silent" on whether excess revenues could be used to repay the $1,584,171 debt. Accordingly, it was inappropriate for the PUC to make a ruling on the use of excess revenues in its order on remand. Consequently, the PUC's ruling is vacated to the extent that it allows Newport Water to use the $191,997 in excess revenues to pay down the $1,584,171

debt that it owes to the city. Only if the PUC takes action independent from its order in docket No. 3818 may Newport Water use these funds to repay its debt.[8]

### iii

### Repayment of $1,584,171

Portsmouth also argues that the PUC erred when it found that there was no evidence showing that Newport Water had repaid the city the sum of $1,584,171. First, Portsmouth contends that that issue was not before the PUC on remand. And second, Portsmouth asserts that, assuming the issue was properly before the PUC, the PUC incorrectly held that there was no evidence that $1,584,171 had been repaid. Portsmouth asserts that the full $1,584,171 has been repaid, but it appears to base that conclusion on a single sentence from Newport Water's June 2009 brief to the PUC regarding its rate-change application in docket No. 4025. In that brief, Newport Water wrote that "[i]t is [our] position that these specific expenses have been paid." Portsmouth asserts that this shows that Newport Water repaid the debt. Newport Water, however, disagrees with Portsmouth, and instead says that it has not repaid the debt and that the quoted language indicates only that the city has advanced those expenses on behalf of the utility. Furthermore, at oral argument, the parties were not able to agree on how much, if any, of the debt had been repaid.

---

[8] It is pertinent to note that typically the PUC does not regulate how excess revenues are used because such decisions fall within the managerial discretion of the utility. "We have stated consistently that the broad regulatory powers of the [PUC] ordinarily do not include the authority to dictate managerial policy. * * * It is not the function of the [PUC] to manage the utility or to exercise the prerogatives of ownership." In re Narragansett Bay Commission General Rate Filing, 808 A.2d 631, 636, 637 (R.I. 2002). In this same vein, the PUC observed in its order on remand that "[t]he usage of such funds is normally a management decision by the utility based on a reasonable determination of where the funds are needed the most. This is normally not an area into which the [PUC] is entitled to delve * * *." However, as stated above, the use of excess revenues was not part of our remand.

The PUC, for its part, agrees with Portsmouth that the issue was not before it on remand, maintaining that, because this Court did "not specifically request[] the [PUC] to make a determination on this issue in its Order, the [PUC] declined to do so at Open Meeting." Although the PUC did not affirmatively rule on the issue, it did note "that there is no evidence in the Record in Docket No. 4025 that Newport Water repaid $1,584,171 to the City of Newport in Fiscal Year 2008." The PUC went on to add that "[t]he Cash Flow Reports showed that Newport Water had never reduced its payables to zero and further, that as of June 30, 2008, one year after the Cash Flow Report used in Docket No. 3818, Newport Water's outstanding balance to the City was $1,005,417."

"The findings of the [PUC] on questions of fact shall be held to be prima facie true, and * * * [this Court], shall not exercise its independent judgment nor weigh conflicting evidence." Section 39-5-3. If this Court cannot determine the facts based upon the PUC's written order, we will not speculate as to the facts, nor will we search the record in our own fact-finding mission. Rather, we will remand the case to the PUC for further fact-finding. See Narragansett Electric Co., 35 A.3d at 931.

Here, the only fact that the PUC has documented regarding the repayment of the $1,584,171 debt is that Newport Water never reduced its payables to zero. Given this limited fact-finding and the fact that Portsmouth and Newport Water disagree as to how much has been repaid, it is our opinion that the record is simply unclear, and we are therefore unable to address Portsmouth's contention that the PUC erred by not ordering the city to repay portions of the $1,584,171 debt to the utility. We therefore direct the PUC to certify to this Court how much Newport Water has repaid to the city as a result of the report and order in docket No. 3818.

- 16 -

## III

## Conclusion

For the reasons stated in this opinion, we quash the writ previously issued and affirm the Public Utilities Commission's order on remand in regard to its definition, identification, and quantification of "efficiencies" as it relates to the order in docket No. 3818. However, we vacate the PUC's order on remand to the extent that it allows Newport Water to use $191,997 in excess revenues to pay down its $1,584,171 debt to the city. We note that Newport Water may not access the $191,997 for the purpose of paying the $1,584,171 debt absent further action by the PUC. The PUC is directed to expeditiously certify to this Court how much of the $1,584,171 debt has been remitted to the city. The records certified to this Court are remanded to the Public Utilities Commission with our decision endorsed thereon.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**  Portsmouth Water and Fire District v. Rhode Island Public Utilities Commission.

**CASE NO:**  No. 2012-242-M.P.
(4025)

**COURT:**  Supreme Court

**DATE OPINION FILED:**  December 6, 2016

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**  Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**  Rhode Island Public Utilities Commission

**JUDGE FROM LOWER COURT**:

N/A

**ATTORNEYS ON APPEAL:**

For Petitioner:  Adam Ramos, Esq.
Gerald J. Petros, Esq.

For Respondent:  Joseph A. Keough, Esq.
Leo J.Wold, Esq.
Karen O. Lyons, Esq.